[L.A. No. 30131. In Bank. Apr. 15, 1974.]

DONALD R. OGDON, Petitioner, v.
WORKMEN'S COMPENSATION APPEALS BOARD,
SAN BERNARDINO COUNTY WELFARE DEPARTMENT et al.,
Respondents.

**COUNSEL**

Thompson, Talbott & Lemaster and George D. Thompson for Petitioner.

Rushing & Clark, Rushing, Clark & Haight, Albert G. Clark, Jr., Daniel S. Brunner, W. Dayton Coles, Jr., and Jay-Allen Eisen as Amici Curiae on behalf of Petitioner.

Stanford D. Herlick, County Counsel, for Respondents.

**OPINION**

**McCOMB, J.**—Donald R. Ogdon, an applicant for workmen's compensation, seeks review of an award of lien made by the appeals board to the San Bernardino County Welfare Department in the sum of $2,031.50 against the sum of $9,177.91, the balance remaining under the compromise and release agreement entered into between Ogdon, his employer, and the latter's insurance carriers after deduction of other liens not here contested. The referee ordered that the sum of $2,031.50 be withheld from payment pending determination of the validity of the lien asserted by the county welfare department (County). The lien was ordered paid in full by the appeals board.

The County had paid moneys to Ogden under the Aid to Families with Dependent Children Program (AFDC) (Welf. & Inst. Code, § 11200 et seq.) during a period subsequent to industrial injuries when he was no longer receiving compensation disability payments, his claims for permanent disability and additional temporary disability were pending and disputed, he was physically unable to work, he had a wife and four children to support, and he qualified for benefits under the AFDC program for the support of himself and his family. The County discontinued payment to Ogdon when the compromise and release agreement settling his workmen's compensation claim was executed. It then asserted a lien against the award for the AFDC payments theretofore made, relying on a statutory provision allowing liens to be filed against compensation awards for "The reasonable value of the living expenses of an injured employee or of his dependents, subsequent to the injury" (Lab. Code, § 4903, subd. (c)).

It would serve no useful purpose to recount the complex procedural history of this case. It is sufficient to note that there is now no issue as to

the validity of the compromise and release agreement, the propriety of its approval by the appeals board, the eligibility of Ogdon to receive AFDC benefits during the period in which he received them, the absence of fraud or failure to disclose income or resources, and the use of the funds so received for the support of himself and his family. The fact that the award was based on a settlement agreement rather than litigation creates no problem. ■ It is settled law that an approved compromise and release agreement has the same force and effect as an award made after a full hearing. (Lab. Code, § 5002; *Aetna Life Ins. Co. v. Ind. Acc. Com.* (1952) 38 Cal.2d 599 [241 P.2d 530]; *Raischell & Cottrell, Inc. v. Workmen's Comp. App. Bd.* (1967) 249 Cal.App.2d 991, 997 [58 Cal.Rptr. 159].)

■ The general issue is whether the appeals board acted without or in excess of its jurisdiction in allowing this lien. It is a constitutional tribunal (Cal. Const., art. XX, §§ 17½, 21) but if it allows a lien in satisfaction of an obligation not specified in section 4903 of the Labor Code it acts in excess of its authority and without jurisdiction. (*Western Union Tel. Co. v. Fibush* (1935) 4 Cal.2d 185, 188 [48 P.2d 37].)

The determination of this issue requires review of the pertinent provisions of the state Workmen's Compensation and Insurance Act (Lab. Code, div. 4, § 3201 et seq.), the state Public Social Services Act (Welf. & Inst. Code, div. 9, § 10000 et seq.), the federal Social Security Act (42 U.S.C.A § 601 et seq.) and administrative regulations promulgated by the Department of Health, Education and Welfare (HEW) (45 C.F.R. § 200 et seq.) in connection with the federal act.

■ We begin with the lien provisions of the Labor Code. Section 4903 must be read in conjunction with section 4901.[1] Section 4901 provides: "No claim for compensation nor compensation awarded, adjudged, or paid, is subject to be taken for the *debts* of the party entitled to such compensation *except as hereinafter provided.*" (Italics added.) Section 4903 itemizes the "debts" which may be allowed as liens against a compensation award by the appeals board.[2] These two sections indicate a clear

---

[1] Both derive from section 24 of the Workmen's Compensation Insurance and Safety Act of 1917 (Stats. 1917, ch. 586, p. 851) and are interdependent.

[2] Section 4903. "The appeals board may determine, and allow as liens against any sum to be paid as compensation, any amount determined as hereinafter set forth in subdivisions (a) through (g) of this section. If more than one such lien be allowed, the appeals board may determine the priorities, if any, between the liens allowed. The liens which may be allowed hereunder are as follows:
"(a) A reasonable attorney's fee . . . .
"(b) The reasonable expense incurred . . . . [for medical and hospital treatment].

legislative intent to remove such awards from the operation of the usual remedies available to creditors, to limit and regulate the kinds of debts which may be allowed, and to insure that the award is made available to the injured employee for his recovery and rehabilitation in accordance with the purposes of the act. (*Department of Mental Hygiene* v. *Industrial Acc. Com.* (1960) 183 Cal.App.2d 832, 834-835 [7 Cal.Rptr. 257]; see *Pacific E. Ry. Co.* v. *Bonding etc. Ins. Co.* (1921) 55 Cal.App. 704 [204 P. 262]; 2 Hanna, Law of Employees' Injuries and Workmen's Compensation (1973) § 17.07 [4] [a].)

Section 4903 is a procedural statute (*Lohman* v. *Barker Bros. Corp.* (1957) 22 Cal.Comp.Cases 247). ▆ In order to assert a lien against a compensation award there must be a valid debt and the debt must be within one of the classes enumerated in the statute for which a lien may be lawfully declared in that proceeding (*Los Angeles* v. *Ind. Acc. Com.* (1926) 76 Cal.App. 639 [245 P. 796]). The creditor must possess a right of repayment. Liens may not be asserted for moneys paid pursuant to a contract (*Glass Containers, Inc.* v. *Ind. Acc. Com.* (1953) 121 Cal.App.2d 656, 660 [264 P.2d 148]); voluntarily (*Dean* v. *Signal Oil and Gas Co.* (1944) 10 Cal.Comp.Cases 78); or as a gift (*Ila* v. *Cal. Comp. Ins. Co.* (1953) 18 Cal.Comp.Cases 241).

▆ Government entities are entitled to the same standing as private citizens in asserting section 4903 liens (*Pac. Employers Ins. Co.* v. *Ind. Acc. Com.* (1959) 24 Cal.Comp.Cases 38; cert. den., 359 U.S. 911 [3 L.Ed.2d 575, 79 S.Ct. 588]), but their liens must be statutorily conferred (*Fifield Manor* v. *Finston* (1960) 54 Cal.2d 632, 642 [7 Cal.Rptr. 377, 354 P.2d 1073, 78 A.L.R.2d 813]). In *Pacific Employers* a lien claim of the Veterans Administration was allowed for medical treatment provided to

---

"(c) The reasonable value of the living expenses of an injured employee or of his dependents, subsequent to the injury.

"(d) The reasonable burial expenses . . . .

"(e) The reasonable living expenses of the wife or minor children . . . where such employee has deserted or is neglecting his family. . . .

"(f) The amount of unemployment compensation disability benefits which have been paid under or pursuant to the Unemployment Insurance Code in those cases where, pending a determination under Division 4 of this code, there was uncertainty whether such benefits were payable under the Unemployment Insurance Code or payable hereunder; provided, however, that any lien under this subdivision shall be allowed and paid as provided in Section 4904.

"(g) The amount of unemployment compensation benefits and extended duration benefits paid to the injured employee for the same day or days for which he receives, or is entitled to receive, temporary total disability indemnity payments under this division; provided, however, that any lien under this subdivision shall be allowed and paid as provided in Section 4904."

an injured veteran when his employer's compensation insurer refused to provide it. Veterans Administration regulations, which are promulgated under· congressional authority, provide that medical care can be furnished without cost to a veteran for non-service connected disability only to the extent that third parties are not liable therefor. In furnishing such medical care the Veterans Administration came within subdivision (b) of section 4903.

■■■ No provision is made in section 4903 for the allowance of a lien to the Department of Social Welfare or to a county for the payment of AFDC funds to a compensation claimant during the period while his claim is being disputed. It appears to be significant that the Legislature has made specific provision for the allowance of a lien to the Department of Employment for reimbursement of unemployment compensation disability benefits paid during the period where there is uncertainty whether benefits are payable under the Unemployment Insurance Code or under the Workmen's Compensation and Insurance Act (subd. (f)) and has made specific provision for reimbursement of unemployment compensation benefits and extended duration benefits paid for the same days for which he receives or is entitled to receive total disability indemnity .payments (subd. (g)). Under the well-known rule of statutory interpretation, *expressio unius est exclusio alterius,* the failure of the Legislature to make provision in this section for recoupment or reimbursement of AFDC funds paid during a period of uncertainty whether a workmen's compensation claim would be allowed seems intentional. Subdivisions (f) and (g) illustrate a deliberate balancing by the Legislature of competing public policies,—to avoid overlapping or duplicating payments for the same period to the same injured employee, to encourage prompt payment of benefits where there is a question as to the source to which he should look for aid, and to avoid jeopardizing or diminishing his statutory right to benefits during the period of need and uncertainty.

We next examine the pertinent provisions made by Congress and the Legislature with regard to the AFDC program. This program is state-supervised and county-administered,_ but is encouraged and financed in substantial part by grants-in-aid from the federal government (tit. IV-A, Social Security Act, 42 U.S.C.A. §§ 601-609). Federal funds are advanced to participating states according to the minimum standards of eligibility and administration set by title IV-A in order to carry out the program "as far as practicable under the conditions in such State" (*id.,* § 601). It is basically a voluntary program, with the determination of standard of need and level of benefits left to the individual participating states. (*Rosado* v. *Wyman* (1970) 397 U.S. 397 [25 L.Ed.2d 442, 90 S.Ct. 1207]; *California*

*Welfare Rights Organization* v. *Carleson* (1971) 4 Cal.3d 445, 450 [93 Cal.Rptr. 758, 482 P.2d 670].) States electing to participate must comply with the mandatory requirements established by the act, as interpreted and implemented by regulations promulgated by HEW (*County of Alameda* v. *Carleson* (1971) 5 Cal.3d 730, 739 [97 Cal.Rptr. 385, 488 P.2d 953]).

The stated purpose of the federal act is to encourage "the care of dependent children in their own homes or in the homes of relatives . . . to help maintain and strengthen family life and to help such parents or relatives to attain or retain capability for the maximum self support" (42 U.S.C.A. § 601). Such aid must be furnished to all eligible individuals with reasonable promptness (*Carleson* v. *Remillard* (1972) 406 U.S. 598 [32 L.Ed.2d 352, 92 S.Ct. 1932]). Several categories of assistance programs have been established.[3] Considerable leeway is given to the states in setting up a welfare plan to carry out these programs. (*Dandridge* v. *Williams* (1970) 397 U.S. 471 [25 L.Ed.2d 491. 90 S.Ct. 1153].)

██ There are no provisions in the federal act or federal regulations requiring states to effect recoveries by the imposition of liens, or otherwise, of moneys properly paid to AFDC recipients, nor limiting the right of states to do so.[4] Any recoveries made by a state must be shared with the federal government (42 U.S.C.A § 603(b)(2)(B)).

At common law in the absence of fraud in procuring relief a recipient of charity was under no obligation to repay the government agency disbursing such charity. (*County of L.A.* v. *Security First Nat. Bank* (1948) 84 Cal. App.2d 575, 578 [191 P.2d 78]; *Guardians of Pontypridd* v. *Drew* (1927) 1 K.B. 214; Graham, *Public Assistance: The Right to Receive; The Obligation to Repay* (1964) 43 N.Y.U.L.Rev. 451, 454 et seq.)

██ In the absence of statute therefore no liability rests upon the recipient of *public assistance* in this state to reimburse the state or county for

---

[3]The major ones are Old Age Assistance ("OAA") (42 U.S.C.A. § 301 et seq.); Aid to the Blind ("AB") (42 U.S.C.A. § 1201 et seq.); Aid for the Permanently and Totally Disabled ("AFTD") (42 U.S.C.A. § 1351 et seq.); and Aid to Families with Dependent Children ("AFDC") (42 U.S.C.A. § 601 et seq.).

[4]In 1960 with the establishment of the Medical Assistance for the Aged ("MAA") Program, Congress first imposed a limit on the recovery power of the states (42 U.S.C.A. § 302(a)(11)(E)); a similar limitation was imposed in the Medical Assistance (Medicare) Program in 1965 (42 U.S.C.A. § 1396a(a)(18)); each provides that no lien can be imposed on property for medical assistance properly furnished prior to the death of the recipient.

aid legitimately obtained and granted.[5] (See *County of Alameda* v. *Janssen* (1940) 16 Cal.2d 276, 283-284 [106 P.2d 11, 130 A.L.R. 1141] [Old Age Security]; 23 Ops.Cal.Atty.Gen. 29 (1954) [Aid to Needy Children.].)

California is one of the states which has not made any statutory provision for recoupment or reimbursement of AFDC benefits properly paid.[6]

The Legislature has explicitly provided that the public assistance statutes shall be "liberally construed to effect the stated objects and purposes of the program" (Welf. & Inst. Code, § 11000); that "No person receiving aid under a public assistance program shall be considered a pauper or an indigent by reason thereof, and no warrant drawn in payment of the aid given shall contain any reference to indigency or pauperism" (§ 11001); and that *"All aid given . . . shall be absolutely inalienable by any assignment, sale, or otherwise . . . ."* (§ 11002). (Italics added.)

In section 11004 the Legislature has required that these programs "shall be administered fairly to the end that all persons who are eligible and apply . . . shall receive the assistance to which they are entitled promptly, *with due consideration for the needs of applicants and the safeguarding of public funds."* (Italics added.) The subdivisions of that section indicate legislative concern for both. They provide for *adjustments in current or future grants* where mistakes have been made in making payments (county) or in full disclosure (recipient).[7]

---

[5]*Public Assistance* programs are those state programs established to implement the partially federally funded Social Security Act provisions, and the state Department of Social Welfare is charged with supervision thereof. (Welf. & Inst. Code, §§ 10051, 10054, 10061.) They are contained in part 3 of the Public Social Services Act and are to be distinguished from the *general assistance* programs contained in part 5 of that act (Welf. & Inst. Code, §§ 17000 to 18000). The latter are entirely state financed and are designed to carry out the traditional duty of counties and cities to provide aid to indigent residents who are not otherwise supported. (*County of L.A.* v. *Dept. of Social Welfare* (1953) 41 Cal.2d 455 [260 P.2d 41].)

[6]For discussion of provisions made by other states see Graham, *supra,* 43 N.Y.U.L. Rev. 451, 481-489; HEW Report No. 50, Characteristics of State Public Assistance Plans Under the Social Security Act (1962); *Snell* v. *Wyman* (S.D.N.Y. 1968) 281 F.Supp. 853, affd. (1969) 393 U.S. 323 [21 L.Ed.2d 511, 89 S.Ct. 553]; *Charleston* v. *Wohlgemuth* (E.D.Pa. 1971) 332 F.Supp. 1175; Baldus, *Welfare as a Loan; An Empirical Study of the Recovery of Public Assistance Payments in the United States* (1973) 25 Stan.L.Rev. 123.

[7]Subdivision (e) of section 11004 provides that "Current grants may be reduced because of prior overpayments *only if* the recipient has income or resources available in the amount by which the county proposes to reduce payment" and that *"In no event* shall the grant to a needy child be reduced unless the parents or other re-

California has made provision for recovery of moneys paid under a public assistance program in limited circumstances only: where benefits have been obtained as a result of fraud;[8] where there has been a good faith mistake made respecting ownership of excess property;[9] and where separation or desertion by a parent or parents has resulted in aid being granted to a spouse or child or children.[10] These sections must also be construed under the rule that the expression of one thing is the exclusion of another.

sponsible persons have sufficient available resources or income to meet the current needs of the needy child according to the department standard during the period of reduction." (Italics added.) Subdivision (f) provides that where it cannot be proved that overpayments were received in bad faith the "amount collectible shall be limited to an amount equal to the market value of the excess property or the amount of aid granted during the period the excess property was held, *whichever is the lesser.*" (Italics added.) Subdivision (c) provides that any person who makes full and complete disclosure is entitled to rely upon the award of aid as being accurate, and allows for adjustment in amount of grant for changes in income or need which occur too late to be reflected in the current grant.

[8]Welfare and Institutions Code, section 11004, subdivision (d), provides that if any overpayment results because of the willful failure to report facts or because of any willfully fraudulent device, the county paying the aid shall be allowed one year to adjust current grants to recover the overpayment; that such adjustment is permitted concurrently with any suit for restitution; and that recovery of overpayment by adjustment shall reduce by the amount of such recovery the extent of liability for restitution.

Sections 11483, 12250 and 12850 provide for criminal punishment of any person obtaining aid for himself or another by means of false statement, representation, impersonation or other fraudulent device; state that the legislative intent is that actions necessary to secure restitution shall be brought against such persons; and require that restitution shall be sought by request, civil action or other suitable means prior to the bringing of a criminal action.

[9]Section 11020 provides that where a recipient has received aid in good faith but in fact owned excess property he shall be considered to have been ineligible for aid during the period for which any excess property would have supported him at the rate of the aid granted to him; and that "In such case the recipient or his estate *shall repay the aid he received during such period of ineligibility.*" (Italics added.)

[10]Section 11350 provides that in such case the parent or parents are obligated to the county for the value of the aid received by the spouse, child or children, reduced by any amounts actually paid during the period in which county support was required; that if an order for support has been issued by a court of competent jurisdiction the obligation under this section shall not exceed the amount specified in such order, less any amount paid; and requires that in the absence of such order "the district attorney *shall bring suit* for enforcement of support pursuant to this section."

Section 11488 authorizes the county department, if it deems advisable, to maintain an action in the superior court to obtain support for the child in any case where aid is granted under this chapter to a child on the basis of the absence of a parent from the home.

In 1965, section 11350 allowed suit to recover AFDC if parent was employed or had sufficient assets. This was repealed in 1971. (Stats. 1971, ch. 578, § 25.4.) The section now allows recoupment only from a parent who has deserted his child.

Section 11350 et seq. authorize the county which has furnished AFDC support to a child or children deserted by a parent or parents to bring *a civil action* for enforcement of support. Its provisions are not in issue here. The only showing made for the need of Ogdon's family for support during the period the AFDC payments were made to him was his physical incapacity to work and his lack of other resources or income at that time. Likewise the provisions of section 248 of the Civil Code, upon which the county relies, are not in issue.[11] Section 248 of the Civil Code was enacted as part of the Uniform Civil Liability for Support Act (Stats. 1955, p. 1451). It authorizes *a civil action* to enforce the right of the child to support against a defaulting parent, to secure reimbursement for the county and to obtain continuing support for the child. The support so furnished is in furtherance of the county's obligation to care and support for indigents and the parents' obligation to care for their children. It is distinguishable from the county's obligation to furnish aid under the AFDC program to qualified individuals for support of themselves and their families.[12] Our inquiry herein is whether the county has a right of reimbursement against a compensation award for moneys lawfully paid pursuant to the AFDC program.

The silence of the Legislature in the matter of authorizing the state or county to seek reimbursement of funds properly paid to AFDC or other *public assistance* recipients, or obligating such recipients to repay, except under those circumstances which are expressly stated, appears to have been purposeful. Furthermore, section 11007 explicitly states that "Aid granted to a recipient of public assistance shall not constitute a lien upon *any property* of the recipient." (Italics added.)

The county professes to find an ambiguity in the word "property" as used in section 11007 and it takes the position that the prohibition is limited to that property which the applicant or recipient may possess

---

[11]Civil Code section 248: "The obligee may enforce his right of support against the obligor and the county may proceed on behalf of the obligee to enforce his right of support against the obligor. Whenever the county furnishes support to an obligee, it has the same right as the obligee to whom the support was furnished, for the purpose of securing reimbursement and of obtaining continuing support. The right of the county to reimbursement shall be subject to any limitation otherwise imposed by the law of this state."

[12]See *County of San Bernardino* v. *Simmons* (1956) 46 Cal.2d 394, 400 [296 P.2d 329] (old age security payments are not payment of indigent aid); tenBroek, *California's Dual System of Family Law: Its Origin, Development, and Present Status, Part III*, 17 Stan.L.Rev. 614, 636-637.

without losing eligibility.[13] It argues that if property has any broader meaning, the effect of such construction should be considered in connection with the provisions of sections 11004, subdivisions (d) through (f), and 11020. We find no ambiguity in the provisions of section 11007 and we find no conflict therein with the provisions of sections 11004 or 11020, hereinabove considered.

The department has an obligation arising from statutory directive to aid all needy persons who are qualified for benefits bestowed by the Legislature. The obligation to pay becomes a debt due from the county to the applicant as of the date the latter is first entitled to receive the aid (*Bd. of Soc. Welfare* v. *County of L. A.* (1945) 27 Cal.2d 81, 85-86 [162 P.2d 630]). Unauthorized relief may be recovered under the statutes hereinabove considered. Ogdon was eligible for the benefits actually received by him and it is not contended that such payment was unauthorized.[14] There is no statute placing him in debt to the county for the receipt of such benefits.

Section 17401 of the Welfare and Institutions Code cited by respondents is not helpful to them. This is contained in part 5 of division 9 of the Welfare and Institutions Code, which relates to *general assistance* programs (county relief to indigents). Section 17109 thereof provides that as a condition to the grant or continuation of aid to an *indigent* the county may require the transfer of property or estate therein or lien thereon, as specified by the board of supervisors, as security for the moneys so expended. Section 17401 relates to the enforcement of such liens. The concluding paragraph states: "In no way do the authorizations and limitations expressed in this section enlarge upon the power of counties to take or impose liens under existing law. Nothing contained in this section shall be construed to permit a county to impose a lien for aid or other assistance granted under any public assistance program established by this code for which federal funds are received by this state, or under the aid to the potentially self-supporting blind program." The Legislature has unequiv-

---

[13]Welfare and Institutions Code section 11257 permits the retention of certain personal property—value must not exceed $600 with exceptions made to enable a recipient to complete an approved plan for self-support. Section 11255 provides a limitation upon the value of real property which may be owned by the child or its parents.

[14]Note: Under the Relief Law of 1945, the provisions of which are made not applicable to public assistance recipients, unauthorized relief is made a debt of the recipient to the state and county participating in the granting of such relief (Welf. & Inst. Code, §§ 18502, 18510). No provision is there made for the reimbursement to the county of authorized payments from after-acquired property.

ocally expressed its intention that section 17401 shall not be construed to permit the county to claim a lien for *public assistance* moneys paid by it.

The Social Security Act requires that the state plan take into consideration an applicant's "other income and resources." (42 U.S.C.A. § 602 (a) (7)). Regulations of the Department of Social Welfare require the county administering a public assistance program to review all potential sources of income of the applicant or recipient (S.D.S.W. 44:103.1) and require the latter to furnish evidence that he has taken all necessary action to claim benefits under other programs (44:103.32). The county was informed and was aware of the status of Ogdon's workmen's compensation claim at the time it made the payments to him. Had he been unable or had he neglected to file such claim, the county could have filed it on his behalf. Any party in interest may file an application on behalf of an injured workman (Lab. Code, § 5501; W.C.A.B. rule 10360 et seq.). The right to file a workmen's compensation claim on behalf of Ogdon does not, of itself, give the county any right to file a claim of lien on its own behalf in such proceeding.

*Current* payments of workmen's compensation benefits must be treated by the county as income in determining the needs of a claimant for or recipient of AFDC benefits and may reduce the amount of Welfare entitlement or may preclude it altogether. (Welf. & Inst. Code, § 11008; S.D.S.W. 44-101.)

Workmen's compensation benefits which are paid in a nonrecurring lump-sum are considered to be personal property rather than income (Welf. & Inst. Code, § 11157; S.D.S.W. 44-111.414). As soon as Ogdon's compensation claim was determined in his favor he received a nonrecurring lump-sum in payment thereof. He then owned personal property in excess of need and lost his eligibility for further AFDC benefits at that time. They were promptly discontinued.

This lump-sum award did include allocations for temporary disability for the period in which Ogdon had received AFDC benefits. Under the department's own regulations this was not considered to be income currently available to him. Ogdon's need for AFDC arose when the workmen's compensation insurance carrier stopped making temporary disability payments; his claim for further temporary disability and for future disability was being disputed; he was unable to work and he was unable to support himself and his family.

There was some overlapping of benefits of a relatively minor amount,

but there was no "windfall" or "double recovery." The situation herein is distinguishable from that presented in *Herrera* v. *Workmen's Comp. App. Bd.* (1969) 71 Cal.2d 254 [78 Cal.Rptr. 497, 455 P.2d 425], where an incapacitated employee performed no services during the time he was injured and it was held that he should not receive payment of both wages and workmen's compensation at the same time; in *Witt* v. *Jackson* (1961) 57 Cal.2d 57 [17 Cal.Rptr. 369, 366 P.2d 641], where an injured employee sued a third party tortfeasor, and it was held that where an employer's lien for workmen's compensation benefits is not allowable against such third party, the amount of the claim must be deducted from the employee-plaintiff's recovery in the civil action to prevent a double recovery or unjust enrichment; or in *State Comp. I. Fund* v. *Ind. Acc. Com. (Hunter)* (1941) 43 Cal.App.2d 233 [110 P.2d 510], which held that in an ordinary case an injured employee should not receive greater compensation than his wages would have been had he not been injured.[15]

In *Philpott* v. *Essex County Welfare Board* (1973) 409 U.S. 413 [34 L.Ed.2d 608, 93 S.Ct. 590], the United States Supreme Court reversed a New Jersey judgment which allowed the county to recover benefits paid under a partially federally funded state disability program from a retroactive lump sum federal social security insurance payment. New Jersey had required Philpott to execute a reimbursement agreement as a condition of securing such benefits. Section 407 of the Social Security Act exempts *federal disability insurance payments* from execution, levy, attachment, garnishment or other legal process. The New Jersey Supreme Court held that recoupment should not be barred by section 407 because the county could have deducted these federal disability insurance payments *had they been currently paid* with the state assistance benefits; therefore, in effect, the county merely advanced the difference to Philpott in order to give him the full amount of his budgetary needs until his monthly federal payments should begin. (*Essex County Welfare Board* v. *Philpott,* 59 N.J. 75 [279 A.2d 806].) The United States Supreme Court found no reason to base an implied exemption from section 407 on that ground and stated "We

---

[15]The county asserts that, based upon the insurance carrier's payments to Ogdon, his actual earnings were $616 per month, therefore his compensation would have been about $380 per month, and, had it been paid during the period in which he received AFDC benefits of $239 per month, he would have received $619 or approximately $3.00 more per month than his workmen's compensation would have provided; and in addition Ogdon enjoyed income tax exemption, and the right to Medi-Cal, food commodities and other benefits during the period in which he received AFDC benefits. The fact remains that Ogdon did not receive both AFDC and workmen's compensation at the same time, and the latter was not then currently available to him.

see no reason why a State, performing its statutory duty to take care of the needy, should be in a preferred position as compared with any other creditor" (p. 416 [34 L.Ed.2d p. 611]). It further held that section 407 "imposes a broad bar against the use of any legal process to reach all social security benefits. That is broad enough to include all claimants, including a State" (p. 417 [34 L.Ed.2d p. 611]).[16]

■ The fact that an AFDC grant may be reduced by the amount of workmen's compensation benefits *currently received* does not of itself create any basis for recoupment of AFDC benefits properly paid from workmen's compensation benefits subsequently awarded.[17]

The only California statute which allowed a lien to counties or to the state as security for reimbursement to them for *public assistance* benefits was a feature of the Old Age Security Act (Stats. 1929, p. 914; Amend. Stats. 1935, p. 1769). In 1937 the Legislature attempted to release all such liens and directed counties to execute and record appropriate instruments of release, without requiring a distinction as to whether or not the property continued to be owned by the person who had received the aid and whose property had been made subject to the lien as security for reimbursement. (Stats. 1937, ch. 375, p. 1185; ch. 369, p. 1005; ch. 405, p. 1343.) This broad release of liens was ruled invalid (*County of Los Angeles* v. *Jessup* (1938) 11 Cal.2d 273 [78 P.2d 1131]), but a more narrowly drawn statute (Stats. 1939, ch. 719, p. 2238) was upheld in *County of Alameda* v. *Janssen* (1940) *supra,* 16 Cal.2d 276 [106 P.2d 11, 130 A.L.R. 1141]. We there held that "The legislature thus has the power to grant aid to indigent aged without imposing any lien upon their property and whenever it does so it supplements direct aid with the benefits which attend freedom from such an encumbrance" and that "In either case the benefits serve the same public purpose of aiding the indigent aged" (p. 283). The same reasoning may be applied here, namely, that the Legislature, by not imposing any lien upon the property of authorized recipients of Aid to Families with Dependent Children nor creating a right of reimbursement in favor of the county or the department for the moneys so paid, intended to supplement direct aid to

---

[16]As hereinabove noted there is no federal prohibition in the present case. Neither is there any express California statute authorizing recoupment on the "advancement" theory expressed by the New Jersey Supreme Court and rejected by the United States Supreme Court.

[17]There is broad language contained in Welfare and Institutions Code section 17403 allowing enforcement of a claim by the county against the after-acquired property of a person for the support of whom public moneys have been expended. However, this section is contained in part 5 and relates only to general assistance (county indigent relief) programs.

such recipients with the benefits which attend freedom from such an encumbrance.[18]

We return then to the provisions of the Workmen's Compensation and Insurance Act. Section 3752 of the Labor Code provides that liability for compensation shall not be "reduced or affected by any insurance, contribution, or other benefit whatsoever due to or received by the person entitled to such compensation, except as otherwise provided by this division." Accordingly, in the absence of specific statutory authority we may not burden compensation awards with liens for benefits to which the injured employee was otherwise lawfully entitled.

Express statutory authorization was the basis for the liens enforced in *Bryant* v. *Industrial Acc. Com.* (1951) 37 Cal.2d 215 [231 P.2d 32]; and *Garcia* v. *Industrial Accident Com.* (1953) 41 Cal.2d 689 [263 P.2d 8], namely, subdivisions (f) and (g) of Labor Code section 4903. Subdivision (c) was not there involved.

In *County of Contra Costa* v. *Industrial Acc. Com. (Wilkerson)* (1963) 212 Cal.App.2d 585 [28 Cal.Rptr. 303], the county claimed a lien for living expenses pursuant to Labor Code section 4903, subdivision (c), for moneys paid under a "public assistance" program. However, the parties apparently *conceded* the propriety of the lien and the only matter in dispute in the review proceedings was whether the commission had *discretion to reduce* the amount of the lien. The court held that in the absence of statute the commission had no such discretion (p. 586). Its statement that the court in *Bryant* had dealt "broadly with all the subdivisions of section 4903" is made with reference to the issue of *discretion to reduce* the amount of lien (p. 587). The only specific reference to the propriety of the lien claim pursuant to subdivision (c) of section 4903 was that "Although

---

[18]The problems exposed here suggest the desirability of express review by the Legislature.

Policy arguments in favor of and against recoupment have been made by the parties herein in their briefs. These arguments are better addressed to the Legislature which is vested with determining such policy.

We are mindful of the legislative intent in enacting the Workmen's Compensation Act that responsibility for the costs of industrial injury should lie with the industry producing it rather than with either the employee or the public. We are also mindful of the legislative intent in enacting the public assistance programs that the administration of those programs be "economic" as well as "humane" and that the income and resources of the applicant be thoroughly examined before granting or continuing to grant benefits under those programs. However, our responsibility is to determine if there is any statutory authority given in either program, or otherwise by statute, for the allowance of a lien by the county against a subsequently paid lump-sum workmen's compensation benefit of funds theretofore properly paid to an AFDC recipient.

this section does not cover all items which might be termed living expenses (*Department of Mental Hygiene* v. *Industrial Acc. Com.,* 183 Cal.App.2d 832 [7 Cal.Rptr. 257]), the commission has long recognized (*Hemming* v. *Industrial Acc. Com.,* 13 Cal.Comp.Cases 23), and here concedes, that payments by a county of *indigent* aid are properly the subject of such a lien" (p. 586). (Italics added.) *Hemming* involved a claim of lien based upon the payment of *indigent aid* under the *general assistance* statutes (then Welf. & Inst. Code, §§ 2600, 2604, now §§ 17107, 17404), which gave the county a claim against the recipient under the conditions there stated. Such payments are distinguishable from payments made by the county under the *public assistance* statutes covering the categorical-aid programs such as AFDC. To the extent that *Wilkerson* appears to hold, without supporting statutory authority, that the county has a lien for moneys properly paid to an authorized recipient of a "public assistance" program contained in part 3 of division 9 of the Welfare and Institutions Code and that it can assert such lien against a compensation award, it is disapproved.

*Lugo* v. *Workmen's Comp. App. Bd.,* 31 Cal.Comp.Cases 273 [writ den. Aug. 18, 1966; hg. den. Sept. 14, 1966] involved allowance against a compensation award of a claim for reimbursement of moneys paid under a different federal program, the partially federally financed Community Work and Training Program. (Welf. & Inst. Code, § 11325; 42 U.S.C.A. § 609.)[19] The opinion does not cite any statutes or regulations which authorize recoupment. A unique feature of that program was that participants had to be covered by workmen's compensation.

■ We find no statutory authority for the county to claim reimbursement for the sums properly paid by it to Ogdon pursuant to the AFDC program nor to assert a claim of lien to recover the amounts so paid from the award subsequently made to Ogdon in the compensation proceeding.

---

[19]42 United States Codes Annotated section 609: "Community Work and Training Programs." These were proposed to encourage and assist states, through programs of a constructive nature for the conservation of work skills and development of new skills for persons over 18 who are receiving aid to families with dependent children. Subdivision (a)(5) thereof provides that the state plan must include provisions which will assure that there will be no "adjustment or recovery by the State or any political subdivision thereof on account of any payments which are correctly made for such work." Welfare and Institutions Code section 11326 now provides that to the extent permitted by federal law, aid shall be terminated for refusal to participate in this demonstration program, without good cause—"provided, however, that aid for the support of a child or children of such recipient of public assistance shall not be reduced or terminated as a result of such refusal to participate. Any recipient of public assistance who refuses without good cause to participate, shall not be considered a needy relative or caretaker of a recipient child and shall not be entitled to receive or use any part of an aid grant paid pursuant to this chapter."

We therefore find that the appeals board acted without and in excess of its jurisdiction in allowing this lien.

The opinion and decision after reconsideration given and under date of February 29, 1972, is annulled and the case is remanded to the Workmen's Compensation Appeals Board with directions to take such further proceedings as may be necessary in accordance with this opinion.

Wright, C. J., Tobriner, J., Mosk, J., Burke, J., Sullivan, J., and Clark, J., concurred.