[No. B068646. Second Dist., Div. Four. July 28, 1993.]

ALICE S. WILLIAMS, Petitioner, v.
WORKERS' COMPENSATION APPEALS BOARD, KENNETH A.
HILTON et al., Respondents.

**COUNSEL**

Leslie C. Burg for Petitioner.

Kenneth A. Hilton, in pro. per., Daniel A. Dobrin, Kegel, Tobin & Truce and Thomas J. McBirnie for Respondents.

**OPINION**

**WOODS (A. M.), P. J.**—We review a decision of the Workers' Compensation Appeals Board (Board) after reconsideration in which the Board ordered payment of $7,060 to applicant's landlord, lien claimant Kenneth A. Hilton, from applicant's workers' compensation award of $12,000. Applicant has petitioned for a writ of review, contending that the order violated Labor Code sections 4901 and 4903 and that the Board failed to comply with Labor Code section 5908.5. We have concluded that the order allowing the lien claim in the amount of $7,060 violated Labor Code sections 4901 and 4903. We therefore annul the Board's decision and remand the matter to the Board with directions.

### FACTUAL AND PROCEDURAL BACKGROUND

Applicant, Alice S. Williams, born January 5, 1965, was employed by the House of Ruth, Inc. (House of Ruth), insured by National American Insurance Company of California, as a counselor and relief staff supervisor at a shelter for battered women from June 1983 to August 1986. On August 22, 1986, applicant was working alone at the shelter in the evening when an intruder entered through a window and attacked her. Applicant resisted the

intruder and obtained police assistance. In seeking workers' compensation, she alleged that she had sustained industrial injuries to her head, upper body, face, and psyche. She also alleged that the employer committed serious and willful misconduct by failing to provide security and adequate outdoor lighting. Applicant filed her workers' compensation application on September 18, 1986.[1]

At the time of injury, applicant was living with her minor child at 695 Pamela Lane, Pomona, California, a residence owned by lien claimant Kenneth Hilton. The residence had been rented to applicant and her family since 1981. At one time or another, applicant's mother, applicant's two older sisters, and two children of one of the sisters have resided there with applicant. The first rental agreement relied on by Hilton to establish his lien claim was signed by applicant, her mother, and applicant's two older sisters in 1981, when applicant was 16 years old. That agreement provided for rent of $650 per month. It was stated in the rental agreement that the tenants signing the agreement rented the premises "individually and severally." In a rental agreement dated October 8, 1986, the rent was decreased to $500 per month, effective September 26, 1986, since the family could not pay the larger amount. The 1986 rental agreement was signed by applicant and her mother. On March 28, 1987, the family was about two years in arrears on the rent, and applicant signed a consent that Hilton's lien claim of $12,510.50 plus amounts due for rent owed thereafter be allowed against her workers' compensation award. The language consenting to allowance of the lien was preprinted language on the Board form on which Hilton set forth his lien claim. The amount of the award had not yet been determined. Hilton had informed applicant on March 27, 1987, that he was increasing the rent to $850 per month, effective April 26, 1987.

At some point in 1987, applicant moved from the Pamela Lane premises. On May 25, 1988, she filed a substitution of attorneys form. The usual issues in her workers' compensation case were settled by compromise and release on May 2, 1991, for the gross amount of $12,000. Three thousand five hundred dollars in permanent disability indemnity advances had already been paid to applicant, and the parties agreed that amount would be deducted from the $12,000 settlement. Applicant's two attorneys were paid $960 and $480 respectively. The balance of $7,060 was claimed by Hilton. The parties agreed that the employer and insurer would not be responsible for Hilton's

---

[1]In her petition for writ of review, applicant asserts that in its June 16, 1992, decision after reconsideration, the Board mistakenly identified the date of industrial injury as March 22, 1986. A review of the entire record, including the application, the medical evidence, and reports of the workers' compensation judge (WCJ), indicates that the date of injury was August 22, 1986.

lien claim. Applicant opposed Hilton's lien claim. On August 30, 1991, the parties entered into a compromise and release settling for $500 applicant's claim that the employer committed serious and willful misconduct.

On September 12, 1991, applicant and Hilton submitted the lien claim matter, applicant and Hilton having stipulated that, if called, applicant would testify that she moved out of the Pamela Lane premises on February 28, 1987, approximately six months after her industrial injury, and lien claimant Hilton, representing himself, having filed a declaration in which he claimed that applicant owed him $13,650. In that declaration, Hilton also claimed that in several other cases he had not evicted injured workers for nonpayment of rent pending disposition of their workers' compensation applications. Hilton stated he had been successful in collecting large sums of back rent as liens against awards to his tenants. Attached to the declaration is a copy of an order approving a compromise and release in one of the prior cases. In that order, Hilton was allowed a lien claim of $16,600 against a gross award of $20,000. Hilton asserted that he had agreed to waive $1,000 of his lien claim in that case at the request of the WCJ because otherwise the applicant would not have recovered anything. After the date of the hearing on his lien claim, Hilton filed a supplemental declaration in which he stated that applicant had not vacated the Pamela Lane premises until July 26, 1987.

On January 10, 1992, in the order approving the compromise and release as to the usual issues, the WCJ ordered that Hilton's lien claim be allowed in the amount of $7,060. The WCJ also approved the compromise and release regarding serious and willful misconduct. The WCJ did not allow any lien claim against that award. In his opinion on decision, the WCJ declared: "A lien is allowed for the reasonable value of the living expenses of an injured employee or dependents subsequent to the injury. *Labor Code § 4903 (c)*. Living expenses also include rent; *Binning vs. Howard*, [(1940)] 5 [Cal.Comp.Cases] 269 . . . ." (Italics in original.)

Applicant petitioned for reconsideration, contending that, pursuant to the language in Labor Code section 4903, subdivision (c), Hilton's lien claim had been valid only for living expenses incurred by applicant *subsequent* to injury and that most of Hilton's lien claim was for a debt incurred prior to applicant's injury. Applicant also contended that, pursuant to the language of Labor Code section 4903, subdivision (c), she could be held responsible only for that portion of rent reasonably attributable to the occupancy of herself and her child, who was her dependent, rather than for the rest of the family that resided with her and that the amount actually owed by her, computed on a daily basis, was $1,116.79.

The WCJ recommended that reconsideration be granted, stating: "It appears that the bulk of the consent lien was for expenses incurred prior to the date of injury, although, [*sic*] it is apparent that the lien claimant could have evicted the applicant and her family but for the agreement to pay the rent at the conclusion of her workers' [compensation] case[.] [T]he provision[] [is] specific and it is not known whether distinction can be made for a consent lien which appears to be valid in terms of money being owed."

On March 23, 1992, the Board granted reconsideration and amended the order approving the compromise and release of the usual issues to limit lien claimant Hilton to $1,116, adopting and incorporating the rationale set forth in the WCJ's report and recommendation on reconsideration.[2]

On April 17, 1992, lien claimant Hilton petitioned for reconsideration, denying that applicant had moved out when she said she had, denying that one of applicant's sisters had lived on the premises with her children while applicant was there, and claiming that applicant, her mother, and one of her sisters were jointly and severally liable for rent owed. He questioned why his lien claim had not been allowed against the amount awarded in settlement of the claim of serious and willful misconduct. Attached to Hilton's petition for reconsideration was a copy of an unlawful detainer judgment entered on September 17, 1986, in which the court found that applicant, her mother, and one of her sisters owed Hilton $11,208 in rent for the premises on Pamela Lane. Applicant responded to the petition, pointing out that Hilton had submitted the matter on September 12, 1991, and arguing that the supplemental declaration and the additional documents attached to the supplemental declaration and petition for reconsideration should not be considered. Hilton asserted applicant's opposition to the petition was not in good faith, and he asked that sanctions of $1,500 be imposed.

On June 16, 1992, the Board again granted reconsideration. In its June 16, 1992, decision after reconsideration, it mistakenly identified the date of applicant's industrial injury as March 22, 1986. The Board noted that applicant had admitted owing the back rent to Hilton and had agreed to pay it. The Board stated: "Applicant entered into two rental agreements. One rental agreement was signed on June 26, 1981 for the sum of $650.00 per month[,] payable on the 26th day of the month. The second rental agreement was signed on October 8, 1986 for the sum of $500.00 per month, and was also payable on the 26th day of the month. Moreover, we note that applicant

---

[2]Although the Board stated it was amending the order approving the compromise and release to allow only $1,116.79 of Hilton's lien claim, the Board's amended order approving the compromise and release allowed only $1,116 of the lien claim.

entered into a rental agreement wherein she was 'individually and severally' liable for the rental value of the premises. As indicated above[,] lien claims for living expenses *subsequent* to the date of injury are allowable by the Board pursuant to Labor Code section 4903[, subdivision] (c), and living expenses include rent. [¶] After careful review of the record, and based on the present facts, and pursuant to Labor Code section 4903[, subdivision] (c), we will allow petitioner's lien claim for the reasonable value of applicant's living expenses *subsequent* to the date of injury. Also, insofar as the Award for Serious and Willful Misconduct constitutes an increase of applicant's benefits, we are persuaded that that Award is also subject to petitioner's lien claim. Accordingly, we will grant the Petition for Reconsideration, and amend both Orders Approving Compromise and Release to reflect that petitioner's lien claim is allowed in the sum of $7,560.00." (Italics in original.)

This timely, verified petition for writ of review followed. In her petition, applicant contends that the Board decision allowing Hilton's lien contained a factual error and violated sections 4901 and 4903. Applicant also contends that the Board failed to comply with Labor Code section 5908.5, which requires the Board to specify in detail the reasons for its decision. Lien claimant Hilton, still representing himself, contends, without citation to any authority, that the Board properly allowed $7,560 of his lien claim. He asserts that applicant and her attorney have lied about several matters and that he is opposed to granting relief to applicant. He requests sanctions of $2,500.

We issued a writ of review on February 3, 1993. In a letter filed March 30, 1993, the Board informed us that applicant's employer, House of Ruth, filed a petition for reconsideration of the Board's June 16, 1992, decision. In its petition, the employer contended that Hilton's petition for reconsideration was untimely. On September 8, 1992, the Board granted the employer's petition and disallowed Hilton's lien claim of $500 against the award for serious and willful misconduct because Hilton had not raised the issue of his entitlement to payment of that lien claim in a timely petition for reconsideration of the order approving the compromise and release of the claim of serious and willful misconduct. Copies of the employer's petition for reconsideration and the Board's September 8, 1992, opinion and order granting reconsideration and decision after reconsideration are in the Board's return, which was filed March 31, 1993.

## Discussion

Claims against workers' compensation awards are governed by Labor Code sections 4900 through 4906. Labor Code section 4900 prohibits assignment of claims for workers' compensation except to the Labor Commissioner under circumstances not relevant here.[3] Labor Code section 4901 provides that, except as later provided in the Labor Code, "[n]o claim for [workers'] compensation nor [workers'] compensation awarded, adjudged, or paid" may be taken for the debts of an injured worker entitled to the workers' compensation. Labor Code section 4902 precludes an award of workers' compensation from being paid to attorneys and agents except as ordered by the Board.

■ "In general, compensation benefits are payable only to the employee, or the employee's dependents in the event of his or her death, and are neither assignable nor subject to the employee's general debts. . . ." (2 Hanna, Cal. Law of Employee Injuries & Workers' Compensation (rev. 2d ed. 1993) The Award & Its Enforcement, § 27.05, p. 27-32, fns. omitted.)

In Hanna, it has also been observed: "The statutory provisions setting forth allowable liens against compensation awards are intended to remove compensation awards from the operation of the usual remedies available to creditors, to limit and regulate the kinds of debts for which liens are allowed, and to ensure that the award is available to the injured employee for his or her recovery and rehabilitation in accordance with the purposes of the Workers' Compensation Act. To assert a lien against a compensation award, there must be a valid debt, and the debt must be within one of the classes enumerated by statute . . . . [¶] . . . [A] lien may not be asserted for money paid pursuant to a contract, voluntarily, or as a gift. . . ." (2 Hanna, Cal. Law of Employee Injuries & Workers' Compensation, *supra*, Liens & Lien Enforcement, § 30.02, pp. 30-6 through 30-7, fns. omitted.)

■ The liens that may be asserted against an award of workers' compensation are set forth in Labor Code sections 4903 and 4903.1, and those provisions have been narrowly construed. In *Rangel* v. *Interinsurance Exchange* (1992) 4 Cal.4th 1, 15 [842 P.2d 82, 14 Cal.Rptr.2d 783] the rule of narrow construction was reaffirmed, when it was stated that ". . . there can

---

[3]In *Richey* v. *Ziegler* (1928) 89 Cal.App. 35 [264 P. 293], an applicant obtained a judgment in superior court based upon her workers' compensation award against a corporation and assigned the judgment. The court drew a distinction between assignment of a workers' compensation claim or award and assignment of a judgment based upon such an award. (*Id.* at pp. 36-37.) The corporation and its two shareholders sought to avoid payment by using the nonassignability of workers' compensation claims as a defense. The court held that the judgment based on the workers' compensation award could be assigned. (*Id.* at p. 37.)

be no lien against a workers' compensation award for any kind of debt except as the Labor Code specifically provides. (Lab. Code, § 4901.)" In *Rangel*, the court observed that when the Board fails to follow this rule, it acts in excess of its authority and without jurisdiction. (*Id.* at p. 15; accord, *Coltherd* v. Workers' Comp. Appeals Bd. (1990) 225 Cal.App.3d 455, 461 [275 Cal.Rptr. 130].)

Subdivision (c) of Labor Code section 4903, with which we are concerned here, allows a lien for "[t]he reasonable value of the living expenses of an injured employee or of his or her dependents, subsequent to the injury." There has been little case law interpreting the precise language used in this subdivision since its enactment in 1937, and there is little commentary on it in the treatises. (See, e.g., the brief treatment in 2 Herlick, Cal. Workers' Compensation Law (4th ed. 1992) Liens, § 17.29, p. 17-29.) There have been some cases involving the entitlement of private insurers to liens for living expenses. In *Prudential Insurance Co.* v. *Workers' Comp. Appeals Bd.* (1978) 22 Cal.3d 776, 780-781 [151 Cal.Rptr. 537, 588 P.2d 239], the California Supreme Court rejected the insurer's lien claim for living expenses pursuant to Labor Code section 4903, subdivision (c), because the insurer had paid the injured worker pursuant to its group disability insurance contract with the worker.[4] ■ In *Rowland* v. *Workers' Comp. Appeals Bd.* (1977) 66 Cal.App.3d 448, 451 [136 Cal.Rptr. 1], it is stated: "The purpose of section 4903, subdivision (c), is to protect persons who advance credit or loan money to dependents for necessary living expenses. It is not intended for the benefit of a debtor who pays a debt legally owing under a contractual obligation. [Citations.]" (Accord, *Glass Containers, Inc.* v. *Ind. Acc. Com.* (1953) 121 Cal.App.2d 656, 660 [264 P.2d 148].)

There have been some cases involving the allowance to various governmental entities of a lien or credit for providing public welfare benefits to injured workers or their families, pending the issuance of an award by the Board. These liens were allowed under Labor Code section 4903, subdivision (c), or Labor Code section 4903, subdivision (e), which permits a lien for living expenses of a spouse or minor children who have been deserted or neglected by an injured employee. In *Ogdon* v. *Workmen's Comp. Appeals Bd.* (1974) 11 Cal.3d 192 [113 Cal.Rptr. 206, 520 P.2d 1022], the California Supreme Court unanimously decided that a lien claim pursuant to Labor Code section 4903, subdivision (c), against an employee's workers' compensation award would not be allowed for public assistance payments made to

[4]The court also rejected the insurer's contention that it was entitled to a lien under Labor Code section 4903.1 because it had furnished benefits under a group disability policy. (*Prudential Insurance Co.* v. *Workers' Comp. Appeals Bd.*, *supra*, 22 Cal.3d at pp. 781-784.) Labor Code section 4903.1 was subsequently amended and currently provides for lien claims for payments of loss of income benefits under group disability policies under certain circumstances.

the employee by a California county under Welfare and Institutions Code section 11200 et seq. under the Aid to Families with Dependent Children program, which was funded in part by provisions of the Social Security Act (42 U.S.C. § 601 et seq.). The rationale was that Labor Code section 4903 did not provide for such a lien and that such public assistance payments did not constitute a debt that the injured worker was required to repay. (*Ogdon, supra,* at pp. 197-200.) In making the decision in *Ogdon,* the court emphasized that liens against workers' compensation awards are purely statutory and that the allowance of them is strictly limited to those included in the statutory language. (At pp. 196-197.)[5]

In the present case, we agree with the WCJ that there may be a proper lien pursuant to Labor Code section 4903, subdivision (c), for rent as a necessary living expense and that the only rent that can be the subject of a valid lien is rent that becomes due after the injury. (See *Binning* v. *Howard* (1940) 5 Cal.Comp.Cases 269, 270.) The language of Labor Code section 4903, subdivision (c), clearly limits the amount payable for living expenses to those incurred "subsequent to the [industrial] injury." Labor Code section 4903, subdivision (c), also clearly limits the amount payable for living expenses to those incurred for the maintenance of the injured worker and his or her dependents.

Thus, the Board could not properly award Hilton any amount for rent that was due prior to August 22, 1986, the date of applicant's industrial injury. The Labor Code does not permit an employee to burden his or her award in such a manner, either preaward or postaward, the employee's "consent" to such an arrangement notwithstanding. Applicant's good or bad intentions and any express undertaking of joint or several liability are irrelevant insofar as Hilton seeks payment through his lien claim for rent due before the date of injury. Any available civil remedies, of course, are not affected by denial of part of Hilton's lien claim.

With respect to any amount of rent that accrued after applicant's industrial injury, the Board could only properly award that amount that constituted

---

[5]A distinction has been drawn between the public assistance with which the Supreme Court was concerned in *Ogdon* v. *Workmen's Comp. Appeals Bd., supra,* 11 Cal.3d 192, and general assistance given by a California county, regarding which the county may require the recipient to transfer or grant property or an interest in property to the county or grant the county a lien. (Welf. & Inst. Code, § 17109.) In *Ogdon,* the court distinguished public assistance from general assistance (*Ogdon, supra,* at pp. 203-204), and in *County of Santa Barbara* v. *Workers' Comp. Appeals Bd.* (1975) 53 Cal.App.3d 820, 822, 827 [126 Cal.Rptr. 281], it was held that under Labor Code section 4903, subdivision (c), and a resolution by the county's board of supervisors, the county was entitled to a lien for general assistance that it had provided to the applicant.

maintenance for applicant and her dependents. Narrow construction would dictate that no exceptions could be made which would, in effect, permit workers' compensation awards to be used for the benefit of nondependent third parties not recognized as persons lawfully entitled to make lien claims by Labor Code section 4903.

It appears from the record in the case before us that applicant's only dependent was her minor child. There were, however, other persons living in the household.

Since situations arise where injured workers share housing with nondependents, pro rata computations of housing expense may be required in some instances, in keeping with the language of Labor Code section 4903, subdivision (c). The concept of prorating living expenses is not unique. It has long played a part in the budgetary process affecting welfare recipients, including families living on grants paid for dependent children. (See, e.g., *Waits* v. *Swoap* (1974) 11 Cal.3d 887, 892, fn. 5 [115 Cal.Rptr. 21, 524 P.2d 117]; *Cooper* v. *Swoap* (1974) 11 Cal.3d 856, 861, fn. 3, 866 [115 Cal.Rptr. 1, 524 P.2d 97].) These two cases deal with budgetary issues outside the workers' compensation system, but demonstrate that proration is a commonly used procedure to achieve fair apportionment in a variety of situations.

Applicant declared that she had lived on Hilton's premises for approximately six months after her injury. Hilton has taken issue with this statement, claiming she was in residence for approximately 11 months after the injury. Whatever the truth about the period of time during which rent subject to claim by lien accrued, we find no support in the record for the Board's allowance of Hilton's lien claim in the amount of $7,060.

We are mindful of applicant's assertion that Hilton improperly attached documentary evidence to his written presentations to the Board. There appears, in any event, to have been rather general confusion about the validity of Hilton's lien claim, as demonstrated by the number of petitions for reconsideration this matter has already generated. Now that the issues are clear, more factual development is required.

We are returning the matter to the Board to resolve three factual questions concerning Hilton's lien claim: (1) how long applicant lived at the Pamela Lane premises following the date of her injury; (2) whether, in fact, applicant's minor child was her only dependent while she was living there; and (3) whether all of the rent owed after the date of injury was directly attributable to maintenance of applicant and her dependent or dependents. If all the rent owed after the date of injury was not so attributable, then the

Board would be required to determine applicant's pro rata share of rent subject to lien for the period of time she lived on the premises on Pamela Lane following her injury.[6] This will then constitute the amount of the lien that can be lawfully claimed by Hilton. Any future decision concerning Hilton's lien claim must provide that the House of Ruth will not be liable for Hilton's lien claim against the $500 penalty for serious and willful misconduct in view of the Board's September 8, 1992, decision after reconsideration. The lien claim may not be allowed against the award that was issued on approval of the settlement of the claim of serious and willful misconduct. In view of our decision, we need not discuss applicant's contention that the Board failed to comply with Labor Code section 5908.5.

### Disposition

The June 16, 1992, decision after reconsideration and the September 8, 1992, decision after reconsideration by the Workers' Compensation Appeals Board are annulled, and the matter is remanded to the Workers' Compensation Appeals Board for proceedings consistent with the views expressed herein. Lien claimant Kenneth Hilton's request for sanctions of $2,500 is denied. Petitioner, Alice S. Williams, shall recover her costs incurred in this writ proceeding.

Epstein, J., and Hoffman, J.,* concurred

---

[6]No one has raised the issue of whether the increase in rent to $850 per month, effective April 26, 1987, was reasonable, so we do not address this issue. In some cases, however, the sudden elevation of rent for a tenant expecting a workers' compensation award might not be regarded as reasonable by the Board, which is statutorily compelled only to pay "reasonable value." (Lab. Code, § 4903, subd. (c).)

*Judge of the Municipal Court for the Los Angeles Judicial District sitting under assignment by the Chairperson of the Judicial Council.