[No. F056205. Fifth Dist. May 6, 2009.]

321 HENDERSON RECEIVABLES ORIGINATION LLC, Plaintiff and Appellant, v.
CYNTHIA ELAINE SIOTECO et al., Defendants and Respondents. [And 10 other cases.]*

*In re Moua (Super. Ct. Fresno County, No. 08CECG00111); In re Goodwin (Super. Ct. Fresno County, No. 08CECG00165); In re Vivian (Super. Ct. Fresno County, No. 08CECG00390); In re Raney (Super. Ct. Fresno County, No. 08CECG00493); In re Bowles (Super. Ct. Fresno County, No. 08CECG00631); In re Cook (Super. Ct. Fresno County, No. 08CECG00639); In re Castellanoz (Super. Ct. Fresno County, No. 08CECG00644); In re Wenstrom (Super. Ct. Fresno County, No. 08CECG00772); In re Duran. (Super. Ct. Fresno County, No. 08CECG00823); In re Cox (Super. Ct. Fresno County, No. 08CECG00847).

**COUNSEL**

Reed Smith, Margaret M. Grignon, Wendy S. Albers, Zareh Jaltorossian; McCormick Barstow, James P. Wagoner and Todd W. Baxter for Plaintiff and Appellant.

No appearance for Defendants and Respondents.

OPINION

ARDAIZ, P. J.—

### INTRODUCTION

Petitioner, 321 Henderson Receivables Origination LLC (hereinafter Henderson), appeals from a final consolidated order denying its petition for approval of transfer of structured settlement payment, contending that the superior court committed multiple legal errors. For the following reasons, we reverse.[1]

### FACTUAL BACKGROUND AND PROCEDURAL HISTORY[2]

#### A. General Background

Henderson, an indirect subsidiary of J.G. Wentworth, LLC, is a factoring company. Factoring companies deal with people who receive structured settlements. "Structured settlements are a type of settlement designed to provide certain tax advantages. In a typical personal injury settlement, a plaintiff who receives a lump-sum payment may exclude this payment from taxable income under I.R.C. [Internal Revenue Code] § 104(a)(2) (providing that the amount of any damages received on account of personal injuries or sickness are excludable from income). However, any return from the plaintiff's investment of the lump-sum payment is taxable investment income. In contrast, in a structured settlement the claimant receives periodic payments rather than a lump sum, and all of these payments are considered damages received on account of personal injuries or sickness and are thus excludable from income. Accordingly, a structured settlement effectively shelters from taxation the returns from the investment of the lump-sum payment. [Citations.]" (*Western United Life Assur. Co. v. Hayden* (3d Cir. 1995) 64 F.3d 833, 839–841 (*Western*).)

"Before 1983, the utility of structured settlements was diminished by the credit risk that the recipient would have to assume. [Citation.] Because the annuity was merely a matter of convenience and did not give the recipient any right in the annuity, in the case of the settling defendant's default the plaintiff could not seek redress from the annuity issuer. [Citation.] This

---

[1] We also grant Henderson's request for judicial notice.

[2] We have included a full background and procedural history, which is based upon the record filed and representations made by the appellant, in order to provide context to Henderson's decision to appeal.

presented a problem if the settling defendant's general credit risk was high." (*Western, supra*, 64 F.3d at p. 840.)

"Congress addressed this problem by enacting I.R.C. § 130. [Citation.] . . . [S]ection 130 allows a tax-neutral transaction in which the settling defendant assigns and a third party assumes the obligation to make periodic payments under most section 104(a)(2) structured settlements. When the third party assignee . . . has a credit rating superior to that of the settling defendant, such an assignment and assumption agreement benefits a plaintiff . . . by allowing her to rely on the assignee's superior credit. [Citation.]" (*Western, supra*, 64 F.3d at p. 840.)

"A key characteristic of a structured settlement is that the beneficiary of the settlement must not have actual or constructive receipt of the economic benefit of the payments. [Citation.]" (*Western, supra*, 64 F.3d at pp. 839–840.) Moreover, until January 2002, the third party assignee or structured settlement obligor could exclude the cost of a "qualified assignment" from its gross income only if the annuity provided that the periodic structured settlement payments "cannot be accelerated, deferred, increased, or decreased by the recipient of such payments." (Int.Rev. Code, § 130(c)(2)(B).) Thus, prior to January 2002, explicit antiassignment provisions in the annuity contract or settlement agreement were required in order for the payees and obligors to receive federal tax benefits from structured settlements.

The periodic structured settlement payments are locked in at the time of settlement based upon the settlement agreement and the annuity contract. However, sometimes, the structured settlement recipient or payee requires immediate cash because of changes in personal circumstances. In these cases, payees sometimes sell some or all of their future payments to factoring companies for an immediate cash payment. Thus, a factoring transaction partially or fully destroys the "structured" aspect of a structured settlement because it permits the payee to convert some or all of the periodic payments into a lump-sum payment.

Partially to ensure that a transfer of a structured settlement payment has no adverse tax impact on any of the persons involved in a factoring transaction, in January 2002, Congress amended the Internal Revenue Code by adopting section 5891 to expressly sanction a tax-free transfer of structured settlement payments. Court-approved factoring transactions were encouraged by the imposition of a 40 percent excise tax on unapproved transactions. In California, the court approval process is governed by the Structured Settlement Transfer Act, (hereinafter SSTA), which requires (1) disclosures to the transferor of the structured settlement payment rights, (2) notice to the Attorney General, and (3) court approval. (See Ins. Code, § 10136 et seq.)

The court-approval process requires the factoring company to file a petition in the county in which the transferor resides for approval of the transfer, attaching copies of the petition, the transfer agreement, the disclosure form, the annuity contract, any qualified assignment agreement and the structured settlement agreement, a list of the names and ages of the transferor's dependents, notice of the court hearing date, and notice of a right to respond. (Ins. Code, § 10139.5, subd. (c).)

After consideration of the petition and its attached documents, any written support or opposition by interested parties, and any evidence presented at the hearing, the court grants or denies the petition. In order to grant the petition for approval, the court must expressly find (1) the transfer is in the best interest of the transferor, taking into account the welfare and support of the transferor's dependents; (2) the transferor has been advised in writing to seek independent professional advice and either has received that advice or knowingly waived it; (3) the transferor has received the disclosure form; (4) the transfer agreement complies with Insurance Code sections 1016 and 10138; (5) the transfer does not contravene any applicable statute or court order; (6) the transferor reasonably understands the terms of the transfer agreement and disclosure form; and (7) the transferor understands his or her right to cancel and does not wish to do so. (Ins. Code, § 10139.5, subd. (a).)

The transfer agreement is effective only upon approval in a final court order. (Ins. Code, § 10139.5, subd. (a).) The court that approves the transfer retains "continuing jurisdiction to interpret and monitor the implementation of the transfer agreement . . . ." (Ins. Code, § 10139.5, subd. (f).)

Since 2002, Henderson has obtained judicial approval of more than 2,000 structured settlement payment transfers throughout California, including factoring transactions made in Fresno County. However, beginning in March of 2008, several superior court judges in Fresno County issued tentative rulings denying petitions brought by factoring companies other than Henderson. The judges cited concerns that such transfers were barred by antiassignment provisions in the annuity contracts and underlying settlement agreements, and could contravene orders approving a minor's compromise. The tentative rulings also criticized documentation provided by the petitions, accused the factoring companies and their lawyers of willfully omitting material facts and documents, directed the clerk to serve the order on the Attorney General and State Bar, and required the factoring companies to attach the order to future petitions filed in Fresno County.

## B. Instant Petitions

Henderson filed the petitions involved in this appeal in February and March 2008. No interested parties opposed the petitions.

Judge Simpson heard the petitions on the following dates: *Moua* and *Goodwin*—March 27, 2008; *Bowles*—April 2, 2008; *Castallanoz* and *Wenstrom*—April 10, 2008; *Vivian*—April 23, 2008; *Raney, Sioteco, Cook, Cox* and *Duran*—April 29, 2008. Judge Simpson had not issued any tentative rulings before the hearings on the petitions. During the hearings, Judge Simpson did not indicate how he would rule on the petitions. Instead, after hearing argument of counsel and, in some cases, questioning the payees, Judge Simpson took the petitions under submission.

On April 29, 2008, a Fresno County Superior Court judge issued a tentative ruling in a pending Henderson petition proceeding (*In re David Fleming* (Super. Ct. Fresno County, No. 08CECG0098) (*Fleming*)). The tentative ruling denied the petition for approval because it found that Henderson had not complied with the requirements of the SSTA. The tentative ruling criticized Henderson for omitting material information and documents from the petition for court approval, and voiced the concerns about the antiassignment provisions in the annuity contract and underlying settlement agreement. In addition, the tentative ruling found that Henderson had a pattern and practice of referring lawyers to the transferors in violation of the SSTA's independent counsel requirement and directed that the *Fleming* order be served on the Attorney General and State Bar, and attached to certain future SSTA petitions.

Although the *Fleming* tentative order did not explicitly void prior court approvals of SSTA petitions, the tentative order concluded that errors similar to the ones that the court found in the *Fleming* petition, such as the failure to include required documentation with the petition and to comply with the independent counsel requirement, would *void* any prior court approval of SSTA petitions. In addition, the tentative order stated that Henderson was not entitled to the structured settlement payments that were transferred and that Henderson could not recover the lump-sum payments that it made to the transferors. The tentative ruling required Henderson to serve the order on each person who had transferred payments to Henderson in the approximately 100 Fresno and Kern County petition cases as well as the insurers in those transactions.

Before similar orders could be issued in the special proceedings on appeal, on May 5, 2008, Henderson filed requests for voluntary dismissal with prejudice of its pending 11 petitions before Judge Simpson. The superior court, however, did not enter any of the dismissals. Rather, between May 19, and May 27, 2008, Judge Simpson issued virtually identical orders in 10 of the 11 cases.

In the orders, Judge Simpson denied the respective petitions and ordered the matters dismissed with prejudice. Judge Simpson denied Henderson's

unilateral requests for voluntary dismissal because he held that Henderson could not dismiss the petitions under Code of Civil Procedure section 581 (because Henderson was not a "plaintiff") or under Code of Civil Procedure section 581, subdivision (b)(2) (because the payees had not filed written consent).

Judge Simpson also found that the SSTA required strict judicial scrutiny of petitions. Judge Simpson further found that the respective petitions were deficient in their required disclosures and that the petitions violated the antiassignment clauses in the settlement agreements.

Judge Simpson concluded that Attorneys Nathan Miller, Dixon Kummer, Loren Nizinski, James Felton, and Eugene Ahtirski were not acting as independent counsel for the payees because they have filed similar estoppel letters in cases involving J.G. Wentworth and Henderson. The estoppel letters did not contain representations that they had advised the payees about income tax consequences or loss of governmental benefits. According to the superior court, the named attorneys "can more properly be characterized as JG Wentworth counsel masquerading as attorneys for the payees in order to push the sales through by creating a false appearance of independent counsel." Judge Simpson concluded that the named attorneys violated Business and Professions Code section 6068, subdivision (d), because they misrepresented to the superior court that they were independent counsel in the 107 cases known of in Riverside, Kern and Fresno County matters listed in the attachments to the consolidated order.

Judge Simpson also concluded that Henderson could not recover its purchase price from the payees because of Henderson's unclean hands.

He further concluded that the transfer violated California's Usury Law because the effective interest rate of the transfer exceeded 10 percent. Judge Simpson also concluded that the transfer was effectively a loan subject to the Usury Law because there was no risk to Henderson, and all of the risk was placed on the payees.

Judge Simpson concluded these errors would render any prior transfer void under Insurance Code section 10137.

Based on these conclusions, Judge Simpson not only denied the petitions, but ordered the clerk to serve the order on the Attorney General and ordered Henderson to attach a copy of the order to any future SSTA petition filed in Fresno County and to any case in this state involving a payee listed in the exhibits to the order. The orders indicated that they would become final unless Henderson objected within 10 days and requested a hearing.

On May 28 and 29, 2008, Henderson filed objections and requested a hearing in the 10 cases in which Judge Simpson had issued orders. Henderson then filed supplemental objections addressing new issues raised by the superior court. The superior court held a consolidated hearing in 10 of the cases on June 19, 2008. On June 18, 2008, however, the superior court issued a similar tentative ruling in the *Cook* special proceeding. Henderson also filed objections to the *Cook* tentative ruling.

On August 26, 2008, Judge Simpson issued a consolidated order in all 11 cases indicating he intended to take judicial notice "of the Fresno Superior Court file for all petitions presented by J.G. Wentworth or 321 Henderson in the Court from January 1, 2002 to present, in addition to the materials available for such petitions from the public websites of the Superior Courts of Kern and Riverside Counties." The superior court gave Henderson 10 days to file written objections. Henderson filed its objections on September 5, 2008.

On that day, Judge Simpson entered a final consolidated order (essentially adopting the prior orders) in all 11 cases. In the September 5 consolidated order, Judge Simpson denied Henderson's requests for voluntary dismissal of the petitions because, according to the superior court, Henderson is not a "plaintiff" for the purposes of Code of Civil Procedure section 581 and the payees did not give written consent. Judge Simpson concluded that, under Insurance Code section 10137, transfers of structured settlement rights that did not comply with the SSTA, violated other applicable laws, or were not court approved were void.

Judge Simpson further concluded that the instant SSTA petitions should be denied because they violated the antiassignment provisions in the respective annuity contracts, qualified assignments, minor's compromise, or settlement agreements. He concluded that the transfers would violate California's Usury Law, California Constitution, article XV, section 1, because the transfer was functionally a loan. Judge Simpson also concluded that Henderson violated the SSTA's independent counsel requirement because it did not use a lawyer referral service that was operated by a state or local bar association and the lawyers that were referred to the payees did not provide the payees with all of the professional advice required by the SSTA. Judge Simpson found that Henderson did not comply with the disclosure requirements of the SSTA and failed to serve all of the interested parties.

Based on these conclusions and findings, Judge Simpson directed the clerk to serve the order on the Attorney General and the State Bar. Additionally, he directed Henderson to attach the order to future petitions for certain payees in approximately 200 other cases (some of which were in other counties) and all future petitions filed in Fresno County for five years and to serve a copy of

the order "on each person or entity listed on any proof of service for any and all of the petitions listed in the Exhibits attached" to the order, "as well as any California agent for service of process for affected insurers."

Henderson appealed, and this court granted Henderson's motion to consolidate the appeals in the 11 cases and to stay enforcement of the order pending appeal. Henderson's petition for writ of supersedeas, staying the order until determination of the appeal on the merits, is currently pending before this court.[3]

## DISCUSSION

### A. Standard of Review

The issues raised on appeal are legal issues and are thus reviewed de novo. For example, the issue of whether the petitions could be voluntarily dismissed under Code of Civil Procedure section 581[4] involves the application of a statute to undisputed facts and is thus a question of law subject to de novo review. (*Gogri v. Jack in the Box Inc.* (2008) 166 Cal.App.4th 255, 264 [82 Cal.Rptr.3d 629].) Similarly, whether a factoring transaction is usurious is a question of law subject to independent review. (*Ghirardo v. Antonioli* (1994) 8 Cal.4th 791, 800–802 [35 Cal.Rptr.2d 418, 883 P.2d 960].) Finally, the proper interpretation of constitutional or statutory provisions is a question of law subject to de novo review. (*Redevelopment Agency v. County of Los Angeles* (1999) 75 Cal.App.4th 68, 74 [89 Cal.Rptr.2d 10].)

■ Many of the issues raised require interpretation and construction of statutes. "The principles governing the proper construction of a statute are well established . . . ." (*California Teachers Assn. v. Governing Bd. of Golden Valley Unified School Dist.* (2002) 98 Cal.App.4th 369, 375 [119 Cal.Rptr.2d 642].) " 'Courts must ascertain legislative intent so as to effectuate a law's purpose. [Citations.] "In the construction of a statute . . . the office of the judge is simply to ascertain and declare what is . . . contained therein, not to insert what has been omitted, or to omit what has been inserted; . . ." [Citation.] Legislative intent will be determined so far as possible from the language of statutes, read as a whole, and if the words are reasonably free from ambiguity and uncertainty, the courts will look no further to ascertain its meaning. [Citation.] " 'The court should take into account matters such as *context*, the object in view, the evils to be remedied, the history of the times and of *legislation upon the same subject*, public policy, and contemporaneous

---

[3] Based upon our decision in this appeal, we deny Henderson's petition for writ of supersedeas as moot.

[4] All further section citations are to the Code of Civil Procedure, unless otherwise indicated.

construction.' " [Citations.] "Moreover, the various parts of a statutory enactment must be harmonized by considering the particular clause or section in the context of the statutory framework as a whole." [Citations.]' " (*Id.* at pp. 375–376.)

## B. Dismissal Under Section 581

On appeal, Henderson contends that the superior court erred when it concluded that Henderson could not voluntarily dismiss its SSTA petitions. We disagree.

■ Section 581 provides ways for a party to dismiss an "action," and ways for a "plaintiff" or the trial court to dismiss a "complaint." Besides distinguishing methods of dismissals for an "action" and a "complaint," section 581 also distinguishes between the time period before "actual commencement of trial" and the time period after "actual commencement of trial." For example, after actual commencement of trial, a party may dismiss an "action" with or without prejudice only with written consent of all other parties. (§ 581, subd. (b)(2).) Similarly, after "actual commencement of trial," a "plaintiff" can only voluntarily dismiss its "complaint" with prejudice (§ 581, subd. (e).)

■ Section 581 defines "action," "complaint," "plaintiff," and actual commencement of "trial." (§ 581, subd. (a).) This court has held that a proceeding to approve an SSTA petition is an "action" for the purposes of section 581. (*321 Henderson Receivables Origination LLC v. Tomahawk* (2009) 172 Cal.App.4th 290 [91 Cal.Rptr.3d 232].) We also held that the SSTA petitioner or the transferee is a "plaintiff" for the purpose of section 581. (172 Cal.App.4th 290.)

■ Finally, "[a]part from certain . . . statutory exceptions, a plaintiff's right to a voluntary dismissal [under section 581] appears to be absolute. [Citation.] Upon the proper exercise of that right, a trial court would thereafter lack jurisdiction to enter further orders in the dismissed action." (*Wells v. Marina City Properties, Inc.* (1981) 29 Cal.3d 781, 784 [176 Cal.Rptr. 104, 632 P.2d 217].)

Here, prior to Henderson's requests for voluntary dismissal under section 581, "trial" had commenced because there had been hearings on the petitions and the cases had been submitted. Moreover, the requests for voluntary dismissal with prejudice were unilateral—there were no written consents by the payees. Thus, Henderson could not voluntarily dismiss its petitions pursuant to the various methods available to dismiss an "action" under section 581. Instead, in order to voluntarily dismiss with prejudice the instant SSTA

petitions, Henderson must show that an SSTA petition is a "complaint" for the purposes of section 581. (See § 581, subd. (e) ["After the actual commencement of trial, the court shall dismiss the complaint, or any causes of action asserted in it, in its entirety or as to any defendants, with prejudice, if the plaintiff requests a dismissal . . . ."].)

■ Section 581, subdivision (a)(2) provides that " '[c]omplaint' means a complaint and a cross-complaint." Unlike section 425.16, section 581 does not include "petition" in its definition of "complaint." (See § 425.16, subd. (h) ["For purposes of this section, 'complaint' includes 'cross-complaint' and 'petition,' 'plaintiff' includes 'cross-complainant' and 'petitioner,' and 'defendant' includes 'cross-defendant' and 'respondent.' "].) Moreover, sections 1063 and 1064, which address special proceedings such as the proceeding to approve an SSTA petition, do not address the term "petition." (See §§ 1063 [addressing terms "plaintiff" and "defendant"], 1064 [addressing terms "judgment," "motion," and "order."].) Thus, we conclude that an SSTA petition is not a "complaint" for the purposes of section 581. Although the superior court erred in concluding that Henderson was not a "plaintiff" for the purposes of section 581, there was no prejudicial error because Henderson could not unilaterally request voluntary dismissal with prejudice of the petitions since trial had actually commenced. Having concluded that the petitions could not be dismissed under section 581, we turn to the merits of the superior court's final consolidated order denying the petitions.

## C. Antiassignment Provisions

The superior court concluded that the petitions must be denied because the antiassignment provisions in "[t]he annuity, qualified assignment, minor's compromise, or settlement agreement bar transfer of the structured settlement payments by each of the payees at issue." Henderson contends that the antiassignment provisions do not bar the factoring transactions at issue because the provisions are unenforceable under the California Uniform Commercial Code, or because the parties have waived enforcement of those provisions. The superior court concluded that the California Uniform Commercial Code was inapplicable because it does not apply to life insurance, and that public policy prohibits waiver of the antiassignment provisions. We disagree with the superior court, and conclude that, where no interested parties have objected, the antiassignment provisions do not bar transfers of structured settlement payment rights.

The documents attached to the petitions contain various antiassignment provisions. For example, the annuity contract in the *Moua* petition contains the following provision: "No Payee or Beneficiary of this policy has the power to assign any payments or benefits of this annuity policy. Any attempt

to make an assignment is void." The settlement agreement in the *Sioteco* petition provides that plaintiff cannot accelerate future payments, receive the present discounted value of future payments, or change or modify the manner, mode or method of meeting any payment. The various court orders approving a minor's compromise attached to the instant petitions, however, do not contain any antiassignment provisions. Thus, the court order approving a minor's compromise does not bar transfers of structured settlement payment rights.

California Uniform Commercial Code, section 9408 provides in relevant part:

"(a) Except as otherwise provided in subdivision (b), a term in a promissory note . . . or a general intangible, including a contract, . . . and which term prohibits, restricts, or requires the consent of the person obligated on the promissory note or . . . to, the assignment or transfer of, or the creation, attachment, or perfection of a security interest in, the promissory note . . . or general intangible, is ineffective to the extent that the term does, or would do, either of the following:

"(1) It would impair the creation, attachment, or perfection of a security interest.

"(2) It provides that the assignment or transfer or the creation, attachment, or perfection of the security interest may give rise to a default, breach, right of recoupment, claim, defense, termination, right of termination, or remedy under the promissory note . . . or general intangible.

"(b) Subdivision (a) applies to a security interest in a payment intangible or promissory note only if the security interest arises out of a sale of the payment intangible or promissory note.

"(c) A rule of law, statute, or regulation that prohibits, restricts, or requires the consent of a government, governmental body or official, . . . to the assignment or transfer of, or the creation of a security interest in, a promissory note, . . . or general intangible, including a contract, . . . is ineffective to the extent that the rule of law, statute, or regulation does, or would do, either of the following:

"(1) It would impair the creation, attachment, or perfection of a security interest.

"(2) It provides that the assignment or transfer or the creation, attachment, or perfection of the security interest may give rise to a default, breach, right

of recoupment, claim, defense, termination, right of termination, or remedy under the promissory note . . . or general intangible. [¶] . . . [¶]

"(e) Subdivision (c) does not apply to an assignment or transfer of, or the creation, attachment, perfection, or enforcement of a security interest in, a claim or right to receive compensation for injuries or sickness as described in paragraph (1) or (2) of subdivision (a) of Section 104 of Title 26 of the United States Code, as amended . . . , to the extent that subdivision (c) is inconsistent with those laws." (Cal. U. Com. Code, § 9408.)

█ The plain language of California Uniform Commercial Code, section 9408, subdivisions (a) and (b) indicates that contractual restrictions on assignments or transfers of general intangibles are generally ineffective to the extent that the restrictions impair the creation of security interests arising out of a sale of the payment intangible or to the extent that the restrictions provide that the assignment or transfer of the general intangible is a breach of the contract. California Uniform Commercial Code, section 9408, subdivision (c) applies to any statutory restrictions on assignment or transfers of general intangibles, although subdivision (e) of the same section provides that subdivision (c) does not apply to the SSTA.

Section 9408 of the California Uniform Commercial Code is applicable to structured settlement payments because the structured settlement payments are considered general intangibles. (See, e.g., *In re Pacific/West Communications Group, Inc.* (9th Cir. 2002) 301 F.3d 1150, 1155 [noting that, under the Cal. U. Com. Code, " 'once a claim arising in tort has been settled and reduced to a contractual obligation to pay (as in, but not limited to, a structured settlement) the right to payment becomes intangible and ceases to be a claim arising in tort' "]; Cal. U. Com. Code, § 9102, subd. (a)(61) [" 'Payment intangible' means a general intangible under which the account debtor's principal obligation is a monetary obligation."].) Moreover, section 9408 applies to sales of structured settlement payments. (See Cal. U. Com. Code, § 9109, subd. (a) ["Except as otherwise provided in subdivisions (c) and (d), this division [division 9] applies to each of the following: [¶] . . . [¶] (3) A sale of accounts, chattel paper, payment intangibles, or promissory notes."].)

Finally, California Uniform Commercial Code section 9408 is applicable to structured settlement payments because, unlike the Uniform Commercial Code (UCC), the California Uniform Commercial Code does not contain the uniform provision excluding annuities from its reach. (See U. Com. Code, § 9-109.) As noted by the UCC Committee of the Business Law Section of the State Bar of California, "California has permitted the creation and perfection of security interests in insurance policies under the Prior California

[Commercial] Code for some 30 years now and the Revised California [Commercial] Code continues the California practice of permitting the creation and perfection of such security interests under Division 9." (The UCC Committee of the Business Law Section of the State Bar of California, UCC Committee Report on Revised Division Nine of the California Commercial Code and California's Non-uniform Provisions (2002) <http://www.calbar.ca.gov/calbar/pdfs/sections/buslaw/ucc/2002_ucc-committee-report-on-revised-division-nine.pdf> [as of May 6, 2009].)

We disagree with the court in *Johnson v. First Colony Life Ins. Co.* (E.D.Cal. 1998) 26 F.Supp.2d 1227, that the California Uniform Commercial Code does not apply to the assignment or transfer of a structured settlement payment right. (*Id.* at p. 1230.) The *Johnson* court provides no analysis for its conclusion that the California Uniform Commercial Code does not apply to the annuity contract at issue in the case.

Although we conclude that contractual antiassignment provisions are generally ineffective in barring transfers of structured settlement payment rights, it is possible that the annuity issuer or the settlement obligor might be able to enforce those antiassignment provisions in certain situations. (See *Johnston v. Landucci* (1942) 21 Cal.2d 63, 68 [130 P.2d 405] [noting that contractual antiassignment provisions are for the benefit of the obligor]; see also Ins. Code, § 10139.3, subd. (d) ["The transferee and any assignee shall be liable to the structured settlement obligor and the annuity issuer for any and all taxes incurred as a consequence of the transfer or as a consequence of any failure of the transferee or assignee to comply with this article or the terms of the structured settlement agreement."].) The record, however, indicates that the annuity issuers and settlement obligors were notified of the SSTA petitions and did not object in the superior court. Thus, it appears that the annuity issuers and settlement obligors may have waived their right to enforce the antiassignment provisions. A determination of these issues, however, is not necessary to resolve this appeal because the annuity issuers and settlement obligors have not made an appearance in the superior court or before this court. Thus, we decline to address the issues of waiver and enforcement of antiassignment clauses by the annuity issuers and settlement obligors, especially in light of the fact that we do not have the benefit of arguments by a party other than the factoring companies.

■ The superior court, however, did conclude that public policy bars the waiver of the contractual antiassignment clauses with respect to factoring transactions. We disagree. We conclude that California Uniform Commercial Code section 9408 evidences a public policy against antiassignment provisions in general and that the SSTA, Insurance Code section 10136 et seq., evidences a public policy in favor of court-approved factoring transactions.

Thus, public policy favors the legal conclusion that antiassignment provisions do not bar court-approved transfers of structured settlement payments.

Therefore, we conclude that, where no interested parties object to the transfer of structured settlement payment rights, the antiassignment provisions in the annuity contract, settlement agreement or other related contracts do not bar the factoring transaction at issue in this appeal.

### D. California's Usury Law

■ The superior court also concluded that the SSTA petitions must be denied because the transfers would violate the prohibition on usury found in California's Constitution, which provides: "No person, association, copartnership or corporation shall by charging any fee, bonus, commission, discount, or other compensation receive from a borrower more than the interest authorized under this section upon any loan or forbearance of any money, goods or things in action." (Cal. Const., art. XV, § 1.) Under current California law, a loan that charges an interest rate greater than 10 percent per annum is usurious. (*Regents of University of California v. Superior Court* (1976) 17 Cal.3d 533, 536 [131 Cal.Rptr. 228, 551 P.2d 844].) ■ However, "[w]ithout a loan or forbearance, usury cannot exist." (*Ghirardo v. Antonioli, supra*, 8 Cal.4th at pp. 801–802.)

The superior court concluded that the transfer of structured settlement payment rights is a loan secured by assignment of the payments, and not a sale of a portion of the annuity. We disagree.

The instant petitions in this appeal follow the court-approved process provided in the SSTA. The transfer of structured settlement agreements is repeatedly described as a sale in the SSTA. For example, the SSTA describes the payee as a "seller." (See, e.g., Ins. Code, § 10138, subd. (a).) The required disclosures expressly equate the word "transfer" with a sale: " 'You are selling (technically called "transferring") your right to receive your payments under a structured settlement.' " (Ins. Code, § 10136, subd. (b).) Disclosures are required for " 'Total dollar amount of payments you are selling' " and " 'Present value of amount you are selling.' " Finally, the SSTA mentions a loan only as a hypothetical for comparison purposes. The SSTA requires the following disclosure to payees:

" 'If you did not sell your right to receive structured settlement payments, but instead borrowed the net amount of $___ and paid that loan back in installments with each of the payments you are now selling, the equivalent interest rate you would be paying for that loan would be ___% per year.' " (Ins. Code, § 10136, subd. (b).)

Thus, the transfer of structured settlement payment rights under the SSTA is not a loan secured by assignment of periodic payments but is a sale of certain rights to receive periodic payments.

E. SSTA's Independent Professional Advice Requirement

The superior court also concluded that it could not approve the SSTA petitions because there were violations of the SSTA's independent professional advice requirement. The SSTA requires that a superior court must find that "[t]he payee has been advised in writing by the transferee to seek independent professional advice regarding the transfer and has either received that advice or knowingly waived that advice in writing" before the superior court can approve the transfer. (Ins. Code, § 10139.5, subd. (a)(2).) The SSTA defines " '[i]ndependent professional advice' " as "advice of an attorney, certified public accountant, actuary, or other licensed professional adviser meeting all of the following requirements: [¶] (1) The adviser is engaged by a claimant or payee to render advice concerning the legal, tax, or financial implications of a structured settlement or a transfer of structured settlement payment rights. [¶] (2) The adviser's compensation for rendering independent professional advice is not affected by occurrence or lack of occurrence of a settlement or transfer. [¶] (3) A particular adviser is not referred to the payee by the transferee or its agent, except that the transferee may refer the payee to a lawyer referral service or agency operated by a state or local bar association." (Ins. Code, § 10134, subd. (f).)

We conclude that many of the superior court's factual findings and legal conclusions on the issue of whether the payees received "independent professional advice" were erroneous. Thus, the consolidated order is reversed and the matters remanded to the superior court for new hearings on this issue.

First, we disagree with the superior court's findings with respect to Attorneys Loren Nizinski, James Felton, and Eugene Ahtirski because these attorneys did not represent any of the 11 payees that were addressed in the consolidated order. Instead, the superior court apparently reached its conclusions that these attorneys are not independent counsel based upon its independent review of publicly available judicial records in the superior courts of Fresno, Kern and Riverside Counties. Further, there is no indication that these attorneys were presented with an opportunity to challenge these findings. Thus, the superior court's findings concerning these attorneys must be vacated because the superior court improperly made factual findings about persons and matters that were not before the court.

Second, we disagree that there is sufficient evidence to support the finding that Henderson has engaged in a systematic violation of the independent

professional advice requirement. It appears correct that Nathan Miller, who represented payees Moua, Goodwin, Vivian, Bowles, Castellanoz, Duran, Wenstrom, and Sioteco, also represented many other payees in transfers involving Henderson. However, the fact that Mr. Miller provided identical estoppel letters for the payees and that some payees may have been improperly referred to Mr. Miller is insufficient evidence to support the conclusion that Henderson systematically violated the SSTA's independent professional advice requirement. We note that the superior court did not make any complaints about Paul G. Carpio, who represented payee Cox, or Colin T. Smith, who represented payee Cook. That alone creates an inference that Henderson was not systematically violating the independent professional advice requirement.

We also disagree with the superior court's finding that Henderson provided counsel to the payees because, in some cases, it improperly referred the payees to certain attorneys and it required that the payees provide an estoppel letter prepared by their attorney. We note that the referral was allegedly improper because a referral service used by Henderson was not a "referral service or agency operated by a state or local bar association," as required by the SSTA. (Ins. Code, § 10134, subd. (f).) However, the use of an improper referral service does not necessarily mean that Henderson is providing payees with counsel. Similarly, the fact that Henderson requires payees to deliver an estoppel letter does not mean that Henderson is providing counsel to the payees. Rather, it is likely that Henderson was trying to streamline the court-approval process by including a document (the estoppel letter) with the SSTA petition that shows the payee had received independent professional advice. Thus, the superior court's subsequent legal conclusion that Henderson owed a fiduciary duty to the payees because it provided them with counsel must be reversed.

Furthermore, we disagree with the superior court's legal conclusion that Mr. Miller and Mr. Dixon Kummer did not satisfy their duty of competency because their estoppel letters did not contain representations that they provided the payees with "advice the Legislature thought necessary, such as whether the client should enter into the agreement in the first place, whether there are tax consequences, or whether the client might lose government benefits such as SSI, Medicare, or Medicaid upon receipt of a lump sum." The estoppel letters are not sufficient evidence to support the finding that the attorneys did not discuss the legal, tax or financial implications of the structured settlement or transfer of structured settlement payment rights with the payees. Rather, the estoppel letters contain representations for use by Henderson. The fact that these representations were insufficient for the superior court to find that the payees have received independent professional advice does not mean that these same insufficient representations support a finding that counsel were incompetent. Instead, a finding that counsel were

incompetent should have been supported by citations to the record of the testimony of the payees and attorneys at the hearings on the petitions.

 The SSTA provides that independent professional advice means "advice of an attorney, certified public accountant, actuary, or other licensed professional adviser" "concerning the legal, tax, or financial implications of a structured settlement or a transfer of structured settlement payment rights." (Ins. Code, § 10134, subd. (f).) The language suggests that the independent professional is required to provide advice on the legal, tax or financial implications of a structured settlement or a transfer of structured settlement rights; however, the SSTA does not unambiguously require that one independent professional must provide all three types of advice. Moreover, with respect to legal advice, nonattorneys must be wary of the prohibition on not practicing law. The SSTA also does not detail specifically what constitutes adequate advice on the legal, tax, or financial implications of the factoring transaction. It is apparently left to the superior court to determine whether adequate independent professional advice has been provided to the payee. The discretionary nature of this determination cautions against a finding of attorney incompetence based upon a failure to provide the required advice because certain superior court judges may believe some advice is required while other superior court judges may believe that that same advice is not required by the SSTA.

 Besides our objections to the superior court's factual and legal conclusions on the independent professional advice requirement, we also note that an SSTA petition can be granted if the payee knowingly waives receipt of independent professional advice in writing. (Ins. Code, § 10139.5, subd. (a)(2).) Thus, a finding that the payee did not receive independent professional advice does not preclude a subsequent refiling of the same SSTA petition that includes such written waivers.

In light of our conclusion that there was insufficient evidence to support the superior court's findings that Henderson has systematically violated the independent counsel and that named counsel did not fulfill their fiduciary duties to the payees, the requirement that Henderson attach the consolidated order to future SSTA petitions and the order that the clerk serve the consolidated order on the Attorney General and the State Bar must be vacated because those orders were predicated on these findings.

## F. Other Requirements of the SSTA

The superior court concluded that the Henderson petitions violated the requirements of the SSTA by (1) failing to include complete copies of the annuity contract, including the antiassignment provisions; (2) making the

entire disclosure bolded and 14-point type size instead of just the required portion of the disclosure; (3) failing to include itemization of expenses; (4) having blanks in the transfer agreement; (5) failing to include a "verification"; and (6) not serving the beneficiaries of the annuities at issue or payee's counsel.

■ We disagree that Henderson violated the SSTA by making the entire disclosure bolded and 14-point type size. The SSTA does not require that some disclosures be in 14-point type size and other portions be in smaller type size. Rather, it requires that some portions of the disclosures be "at least" or "no less" than 12-point type, and that other portions be "printed in 14-point type, circumscribed by a box with a bold border." (Ins. Code, § 10136.) Thus, Henderson did not violate the SSTA by printing most of the disclosures in 14-point type size and bolded, and enclosing only the required disclosures in a box with a bolded border.

■ With respect to the other alleged errors, they are sufficiently serious to support the superior court's discretionary denial of an SSTA petition. We disagree, however, that these errors require a dismissal with prejudice. Rather, these errors can be corrected in subsequently refiled petitions. The superior court thus should have dismissed without prejudice petitions containing these errors. The superior court also has the discretion to condition the order dismissing the petition without prejudice to require that future SSTA petitions involving the same payees and annuity attach the prior dismissal order (which is not the consolidated order in this case).

■ We also disagree with the superior court's findings that other Henderson SSTA petitions besides the 11 at issue in this appeal suffer from some or all of these errors. Those petitions are not before the superior court, and the superior court committed legal error in making factual findings and legal conclusions about those petitions. To the extent that the superior court is voiding petitions that have been approved by other courts, the superior court is also committing legal error. (See *321 Henderson Receivables Origination LLC v. Ramos* (2009) 172 Cal.App.4th 305 [91 Cal.Rptr.3d 222] [holding that a superior court cannot void a previously court-approved SSTA transfer pursuant to Ins. Code, § 10137].)

■ Because the superior court has committed multiple prejudicial errors in making its factual findings and in reaching legal conclusions, and because these errors cannot be separated from valid findings and legal conclusion, we will reverse the entire consolidated order. Henderson may amend the SSTA petitions at issue to correct any errors prior to any new hearing on the petitions.

## DISPOSITION

The judgment is reversed. Appellant shall bear its own costs.

Cornell, J., and Gomes, J., concurred.