Filed 5/2/16

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| ALBERT MATTHEWS,<br><br>    Plaintiff and Respondent,<br><br>        v.<br><br><br>LIBERTY ASSIGNMENT CORPORATION et al.,<br><br>    Defendants and Respondents;<br><br>WC FUNDING GROUP, LLC,<br><br>    Movant and Appellant. | F071371<br><br>(Super. Ct. No. S-150-CV-282983)<br><br><br>**OPINION** |

APPEAL from an order of the Superior Court of Kern County.  Linda S. Etienne, Commissioner.

Christopher R. Milton and Evan S. Chait for Movant and Appellant.

Drinker Biddle & Reath, Ryan S. Fife, Michael J. Miller and Lisa D. Stern for Defendants and Respondents.

No appearance for Plaintiff and Respondent.

-ooOoo-

WC Funding Group, Inc. (WC), a factoring company, is appealing from the denial of its motion for a qualified order approving the assignment to it of a judgement providing for structured settlement payments otherwise payable to Albert Matthews.

Matthews obtained an award in his workers' compensation proceeding, based on a compromise and release containing the terms of the structured settlement agreement, then obtained a court judgment based on the workers' compensation award. The trial court denied the motion on the ground the assignment was prohibited by statute. We agree and affirm.

*FACTUAL AND PROCEDURAL BACKGROUND*

Albert Matthews settled his workers' compensation claim against his employer and others in a structured settlement approved by the Workers' Compensation Appeals Board (WCAB). The settlement provided for an immediate lump-sum payment and monthly payments of $2,800 for life, with ten years guaranteed. The employer's insurer assigned the obligation to make the monthly payments to Liberty Assignment Corporation through a qualified assignment under federal tax law. (26 U.S.C. § 130(c).) In accordance with the requirements for a qualified assignment (26 U.S.C. § 130(c)(2)(B)), the structured settlement agreement provided that the payments to Matthews "cannot be accelerated, deferred, increased or decreased" by Matthews. Liability for the monthly payments was funded through an annuity purchased from Liberty Life Assurance Company. The WCAB approved the parties' compromise and release agreement and entered it as the workers' compensation award.

About three years later, Matthews filed in superior court a request for entry of a clerk's judgment on the workers' compensation award, pursuant to Labor Code section 5806.[1] The clerk entered the judgment "in conformity with the Order Approving Compromise & Release." WC then moved for entry of a qualified order approving assignment of the judgment from Matthews to WC. WC's motion alleged Matthews and WC entered into an "Agreement to Assign Award," by which Matthews agreed to convert his workers' compensation compromise and release into a civil judgment, then assign his

---

[1] All further statutory references are to the Labor Code unless otherwise indicated.

2.

right, title, and interest in the judgment to WC. According to Matthews' declaration, he agreed to sell all of his interest in the judgment to WC. In exchange, he would receive a lump-sum payment of $40,343.34 on court approval of the transaction. He would also receive monthly payments of $1,950 from WC until 2021, when the payments would return to $2,800 per month for life. Matthews stated he would use the lump sum to pay his delinquent mortgage in order to avoid foreclosure on his house; he would also prepay some of his mortgage payments and make some repairs to his home. WC sought court approval of a qualified assignment in order to avoid a federal excise tax of 40 percent of the factoring discount, which it would be required to pay without such approval. (26 U.S.C. § 5891.)

Liberty Assignment and Liberty Life (collectively, Liberty) filed opposition to WC's motion. Liberty argued that by law (§ 4900), by the provisions of the compromise and release agreement, and by the WCAB order that approved the compromise and release agreement, Matthews could not assign the proceeds of his workers' compensation claim prior to payment. The trial court denied WC's motion, concluding that converting the workers' compensation award to a judgment did not alter the character of the award and its assignment was still prohibited by section 4900. WC appeals from the order denying approval of the assignment of judgment.

### *DISCUSSION*

## I.      **Standard of Review**

The primary question presented by this appeal is whether a judgment, based on a structured settlement of an employee's workers' compensation claims against his employer and others, which was agreed upon by the parties and entered as an award in the workers' compensation proceeding, may be assigned by the injured employee. The issue requires interpretation of statutes and orders and application of those statutes and orders to undisputed facts. Accordingly, our review is de novo. (*RSL Funding, LLC v.*

3.

*Alford* (2015) 239 Cal.App.4th 741, 744; *Morgan v. United Retail Inc.* (2010) 186 Cal.App.4th 1136, 1142.)

## II.      Qualified Order Approving Assignment of Judgment

### A.      *Transfer of structured settlement payments*

"'Structured settlements are a type of settlement designed to provide certain tax advantages.  In a typical personal injury settlement, a plaintiff who receives a lump-sum payment may exclude this payment from taxable income under [the Internal Revenue Code].  [Citation.]  However, any return from the plaintiff's investment of the lump-sum payment is taxable investment income.  In contrast, in a structured settlement the claimant receives periodic payments rather than a lump sum, and all of these payments are considered damages received on account of personal injuries or sickness and are thus excludable from income.  Accordingly, a structured settlement effectively shelters from taxation the returns from the investment of the lump-sum payment.'" (*321 Henderson Receivables Origination LLC v. Sioteco* (2009) 173 Cal.App.4th 1059, 1064 (*Henderson*).)

"The periodic structured settlement payments are locked in at the time of settlement based upon the settlement agreement and the annuity contract.  However, sometimes, the structured settlement recipient or payee requires immediate cash because of changes in personal circumstances.  In these cases, payees sometimes sell some or all of their future payments to factoring companies for an immediate cash payment.  Thus, a factoring transaction partially or fully destroys the 'structured' aspect of a structured settlement because it permits the payee to convert some or all of the periodic payments into a lump-sum payment." (*Henderson*, *supra*, 173 Cal.App.4th at p. 1065.)  Under federal law, the transferee of the structured settlement payment rights must pay a federal

4.

tax on the transaction of 40 percent of the factoring discount,[2] unless the transferee obtains court approval of the transfer in advance in a qualified order. (26 U.S.C. § 5891(a), (b).) A "'qualified order' [is] a final order, judgment, or decree which [¶] (A) finds that the transfer … [¶] (i) does not contravene any Federal or State statute or the order of any court or responsible administrative authority, and [¶] (ii) is in the best interest of the payee, taking into account the welfare and support of the payee's dependents." (26 U.S.C. § 5891(b)(2)(A).)

The qualified order must also be issued "under the authority of an applicable State statute by an applicable State court." (26 U.S.C. § 5891(b)(2)(B)(i).) An applicable state statute is "a statute providing for the entry of an order, judgment, or decree described in paragraph (2)(A)"; if the state of domicile of the payee of the structured settlement payments does not have such a statute, then the "'applicable State statute'" is the statute of the state where the person issuing the funding asset for the structured settlement is domiciled or has its principal place of business. (26 U.S.C. § 5891(b)(3).)

The California act[3] governing transfers of structured settlement payment rights defines a "'[s]tructured settlement agreement' [as] an arrangement for periodic payment of damages established by settlement or judgment *in resolution of a tort claim* in which the payment of the judgment or award is paid in whole, or in part, in periodic tax-free payments rather than a lump-sum payment." (Ins. Code, § 10134, subd. (k), italics added.) Because the definition specifies the payments must be for settlement of a "tort claim," the parties here agree the act does not apply to structured settlements of workers' compensation claims. WC contends the Massachusetts statute regarding transfer of

---

**2**    "Factoring discount" is defined as the excess of the aggregate undiscounted amount of structured settlement payments being acquired in the transaction over the total amount actually paid for those payments. (26 U.S.C. § 5891(c)(4).)

**3**    Insurance Code section 10134 et seq.; Structured Settlement Protection act.

5.

structured settlement payments applies, as the law of the state where Liberty Life (the annuity issuer) is domiciled or has its principal place of business.

### B. Contravening state statute

Consistent with federal law (26 U.S.C. § 5891(b)(2)(A)), the Massachusetts statute providing for approval of the transfer of payments under a structured settlement agreement requires that the court or administrative authority asked to approve the transfer expressly find that the transfer "will not contravene other applicable law."[4] (Mass. Ann. Laws ch. 231C, § 2(a)(1) (LexisNexis 2016).) The trial court, in determining whether to issue a qualified order for the transfer of the structured settlement payments, concluded the transaction would contravene California law, because "Section 4900 prohibits the assignment." WC challenges that conclusion.

With an exception not applicable here, under the workers' compensation statutes, "[n]o claim for compensation … is assignable before payment." (§ 4900.) The term "claim for compensation" has been interpreted expansively. In *Pacific E.R. Co. v. Commonwealth Bonding & Cas. Ins. Co*. (1921) 55 Cal.App. 704 (*Pacific*), an injured employee obtained a workers' compensation award against the employer's insurer. (*Id*. at p. 705.) The state subsequently paid the amount of the award to the employee and obtained his assignment of the award. (*Id*. at p. 706.) The state attempted to recover the amount of the award from the insurer.

The issue was the validity of the assignment in light of a statute then providing: "'No claim for compensation shall be assignable before payment.'" (*Pacific*, *supra*, 55 Cal.App. at p. 708.) The state argued the statute applied only to "'claims'" and not to "'awards.'" (*Id*. at p. 708.) The court conceded there was "much reason in his argument

---

**4**     "'Applicable law'" includes the law of any jurisdiction "that is the domicile of the payee" or "under whose law a structured settlement agreement was approved by a court or responsible administrative authority." (Mass. Ann. Laws ch. 231C, § 1 (LexisNexis 2016).) Thus, in this case, it includes California law.

6.

that a restriction upon the assignment of 'claims' which are uncertain in amount is more necessary than a restriction upon the assignment of 'awards' which are fixed amounts, under technical definitions of these terms." (*Ibid*.) The court rejected the argument, however, concluding that the statute "obviously, was intended to cover both claims and awards and that the word 'claim' is used in this broad sense. The act states that no assignment shall be made 'before payment.' Claims are not paid until they become awards, and it is clear that the only thing payable under the provisions of the act is awards. It is evident that the legislature intended that there should be no assignment of claimant's rights whatsoever and that the award should be paid by the one against whom it was made directly to the claimant and to no one else." (*Ibid*.) The court therefore found the assignment of the award was illegal and unenforceable. (*Id*. at p. 709.)

WC relies on *Richey v. Zeigler* (1928) 89 Cal.App. 35 (*Richey*) for the proposition that, once the WCAB award has been entered as a court judgment, section 4900 does not apply to prohibit assignment. In *Richey*, an injured employee obtained a workers' compensation award against her corporate employer and had it entered as a court judgment. (*Richey,* at pp. 35–36.) She then assigned the judgment to the plaintiff, who sought recovery on the judgment against the shareholders of the corporation. The defendants contended the award could not be lawfully assigned before payment. After acknowledging *Pacific* had construed the term "claim" in the statute in its broadest sense as covering both claims and awards, the court stated:

> "It is apparent that defendants are invoking the aid of an act to resist the payment of an award which was designed to protect disabled workmen and their dependents, in the event of death, from making assignments of industrial compensation. That the legislature never intended the act should be used as a shield for this purpose goes without saying. However, this may be, the defense interposed can avail defendants nothing for the reason that the award when reduced to judgment as above recited, lost its actionable character as a claim or award as it became merged in the judgment and the complaint is based upon such judgment and not upon the award.… There could be no action based upon the award after it became

7.

merged in the judgment for, as stated, it had lost its actionable character, nor could the award be paid as it no longer existed. Satisfaction could only be had by payment of the judgment." (*Richey*, *supra*, 89 Cal.App. at pp. 36–37.)

The *Richey* court addressed a situation in which the prohibition against assignment was being invoked not to protect the injured employee and preserve her right to compensation, but to allow the shareholders of the employer to escape liability to compensate the employee for her injury. The court opined that the statute should not be used for that purpose. We have no disagreement with that portion of the opinion.

We disagree, however, with the *Richey* court's conclusion that the judgment on the workers' compensation award was not subject to the prohibition against assignment because entry of judgment caused the award to become merged with the judgment. Like the court in *Pacific*, we believe the focus in interpreting section 4900 should not be on the term "claim for compensation," as denoting the stage of the proceedings at which the assignment is attempted; rather, the focus should be on the term "before payment," indicating the intent that the employee's right to compensation for the work injury cannot be alienated before payment is made. As discussed in *Pacific*, by the prohibition of assignments of claims for compensation under the workers' compensation law prior to payment, "the legislature intended that there should be no assignment of claimant's rights whatsoever and that the award should be paid by the one against whom it was made directly to the claimant and to no one else." (*Pacific*, *supra*, 55 Cal.App. at p. 708.)

In cases addressing liens against workers' compensation awards, courts have observed that sections 4900 (prohibiting assignment of claims for compensation), 4901 (providing no claim for compensation or compensation awarded, adjudged, or paid may be taken for the debts of an injured worker entitled to compensation, except as provided by the workers' compensation statutes), and 4902 (precluding an award of workers' compensation from being paid to attorneys or agents of the employee, except as ordered by the Board) "indicate a clear legislative intent to remove [workers' compensation]

8.

awards from the operation of the usual remedies available to creditors, to limit and regulate the kinds of debts which may be allowed, and to insure that the award is made available to the injured employee for his recovery and rehabilitation in accordance with the purposes of the act." (*Ogdon v. Workmen's Comp. Appeals Bd.* (1974) 11 Cal.3d 192, 196–197.) "'In general, compensation benefits are payable only to the employee, or the employee's dependents in the event of his or her death, and are neither assignable nor subject to the employee's general debts .…'" (*Williams v. Workers' Comp. Appeals Bd.* (1993) 17 Cal.App.4th 582, 589.)

Because of the unique nature of workers' compensation awards and the judgments entered on those awards, we believe a workers' compensation award is not assignable simply because a judgment on the award has been entered. In a workers' compensation proceeding, the WCAB may determine all relevant matters and enter an award. (§§ 5301, 5313.) Alternatively, if the parties reach a compromise, the WCAB may approve it and enter an award based on the compromise and release agreement. (§§ 5002, 5003.) WCAB approval is mandatory: "No release of liability or compromise agreement is valid unless it is approved by the appeals board or referee." (§ 5001.)

A party to a workers' compensation proceeding may obtain a judgment on the award simply by filing with the clerk of the superior court "a certified copy of the findings and order, decision, or award of the appeal board." (§ 5806.) The clerk has a ministerial duty to immediately enter judgment in conformity with the award. (*Ibid.*)

The WCAB retains continuing jurisdiction until five years after the date of the injury to rescind, alter, or amend its decision or award. (§§ 5803, 5804.) No exception is made for an award on which a court judgment has been entered. The WCAB may also stay execution of a judgment entered pursuant to a workers' compensation award. (§ 5808.) Where the WCAB amended the award to reduce the amount awarded after entry of judgment, the WCAB had exclusive jurisdiction to stay execution of the judgment to prevent the employee from recovering an amount in excess of the amended

9.

award, and the superior court was without jurisdiction to do so. (*Vickich v. Superior Court* (1930) 105 Cal.App. 587, 592.)

The *Vickich* court explained:

"The provisions of the Compensation Act which authorize the entry of judgment upon an award and the issuance of execution thereon in the superior court are merely a method adopted for the enforcement of such awards, in lieu of machinery of enforcement which might have been provided for and given to the commission itself, to exercise through executive officers appointed for that purpose.… *The execution on a judgment entered upon an award* of the Industrial Accident Commission [predecessor of WCAB], although in the form of an execution upon a judgment of the superior court, *is in reality an execution upon the award of the commission*. The clerk in issuing the execution, and the sheriff in making his levy and sale under the writ, are for the purposes of the proceeding instrumentalities of the commission in the enforcement of its award. That those officers are respectively the clerk of the county (*ex-officio* clerk of the superior court) and sheriff of the county are simply and only facts which under the statute qualify them to perform these duties." (*Vickich v. Superior Court*, *supra*, 105 Cal.App. at p. 592, italics added.)

Thus, even after the award has been entered as a court judgment, the award and its enforcement still remain within the jurisdiction of the WCAB; the judgment does not entirely replace or supersede the award, as the *Richey* court assumed. The judgment entered on the award of the WCAB is significantly different from, and not subject to all the same procedures as, the judgment entered in a civil action. Because the nature of the award as compensation for an injury within the scope of the workers' compensation statutes does not change when the award is entered as a court judgment, and because the need to protect injured workers from improvident assignment of workers' compensation liability, because of economic pressure or lack of competent advice, continues after entry of judgment, we can discern no reason for applying the prohibition against assignment of a workers' compensation claim differently depending on whether or not the WCAB award has been entered as a court judgment.

10.

There is another wrinkle in the assignability analysis when the workers' compensation award and judgment take the form of a structured settlement. When a civil tort action has been resolved through a structured settlement, any transfer of structured settlement payments requires court approval, whether judgment has been entered on the settlement agreement or not. (Ins. Code, §§ 10137, 10139.5.) Under WC's interpretation of the applicable statutes, the following analysis would apply: The statutory scheme for court approval of a transfer of structured settlement payments applies in tort actions and does not apply to workers' compensation cases. Section 4900's prohibition on assignment of workers' compensation benefits applies only to claims and awards, and not to judgments. Thus, if a workers' compensation proceeding is resolved by means of a structured settlement agreement, assignment of the structured settlement payments is prohibited only until judgment is entered. Once judgment is entered, the structured settlement payments are freely assignable, without court approval, and without compliance with the structured settlement transfer act. The only reason for seeking court review of the transaction would be to obtain a qualified order so that the transferee of the payments could avoid the federal tax on the transaction.

WC's interpretation of the statutes would leave workers' compensation judgments less protected than judgments and settlements in civil tort actions. The workers' compensation laws as a whole, however, manifest an intent to provide more protection to claimants and their compensation rights than is provided in civil actions. For example, all settlements in workers' compensation proceedings must be court approved. (§ 5001.) "A tort release is effective upon execution, but a compromise and release of workmen's compensation liability is invalid until approved by the Workmen's Compensation Appeals Board…. [Its inquiry] should carry out the legislative objective of 'protecting workmen who might agree to unfortunate compromises because of economic pressure or lack of competent advice.' [Citation.] These safeguards against improvident releases place a workmen's compensation release upon a higher plane than a private contractual

11.

release; it is a judgment, with 'the same force and effect as an award made after a full hearing.'" (*Johnson v. Workmen's Comp. App. Bd.* (1970) 2 Cal.3d 964, 973.) Further, there are statutory limits on the type of debts for which liens against the workers' compensation benefits may be asserted. (§§ 4901–4903.1.) The workers' compensation statutes are to be "liberally construed by the courts with the purpose of extending their benefits for the protection of persons injured in the course of their employment." (§ 3202.)

In accordance with its protective approach toward compensation of injured workers, we would expect the Legislature to impose more stringent safeguards on assignments of workers' compensation judgments, including those taking the form of structured settlements, than on assignments of civil judgments, if, indeed, it intended workers' compensation judgments to be assignable at all. Under WC's interpretation of the statutes, however, the Legislature enacted an entire statutory scheme governing transfer of structured settlement payment rights in civil tort actions, but imposed no restrictions at all on transfer of judgments on workers' compensation awards that encompass structured settlements. We do not find WC's interpretation persuasive.

WC concedes that *Pacific* makes workers' compensation awards, as well as claims, unassignable. It has offered no satisfactory explanation or policy reason why we should interpret section 4900 as precluding assignment of workers' compensation benefits when they take the form of an award of the WCAB, but permitting assignment when the same award is memorialized in a court judgment. We conclude the trial court properly denied WC's motion, because the assignment of Matthews' structured settlement payments contravened section 4900.

### C.    *Contravening administrative order*

Before it may enter a qualified order under title 26 United States Code section 5891, a trial court must find not only that the transfer of structured settlement payments does not contravene federal or state law, but also that it does not contravene "the order of

12.

any court or responsible administrative authority." (26 U.S.C. § 5891(b)(2)(A)(i).) "The term 'responsible administrative authority' means the administrative authority which had jurisdiction over the underlying action or proceeding which was resolved by means of the structured settlement." (26 U.S.C. § 5891(c)(5).) In this case, the transaction must not contravene an order of the WCAB.

The defendant in a workers' compensation proceeding or its insurer may obtain federal tax advantages on a structured settlement transaction by making a qualified assignment of the liability to make periodic payments, if the assignee assumes the liability and certain other requirements are met. (26 U.S.C. § 130.) One of those requirements is that "such periodic payments cannot be accelerated, deferred, increased, or decreased by the recipient of such payments." (26 U.S.C. § 130(c)(2)(B).) Here, the employer's workers' compensation insurer made a qualified assignment to Liberty Assignment of the liability to make periodic payments to Matthews. In accordance with the federal statute, the structured settlement agreement provided that the payments could not "be accelerated, deferred, increased or decreased" by Matthews, "nor shall [Matthews] have the power to sell or mortgage or encumber same, or any part thereof, nor anticipate the same, or any part thereof, by assignment or otherwise."

The parties to the workers' compensation proceeding put the terms of their structured settlement into a compromise and release agreement. The WCAB ordered that the compromise and release agreement be approved and entered it as the award to Matthews. Thus, the anti-assignment language became part of the WCAB's award. The superior court then entered judgment "in conformity with the Order Approving Compromise & Release." The anti-assignment language was thereby incorporated into the court judgment. Accordingly, the proposed assignment of structural settlement payments for which WC sought a qualified order did not comply with the federal requirements for such an order, because the transaction contravened both the order of a court and the order of the responsible administrative authority.

13.

#### D.    *Assignment of judgment only*

We reject WC's nonsensical argument that it "is simply seeking a qualified order approving the assignment of a judgment" and "is not seeking at this juncture to acquire the payment rights." WC's motion for a qualified order was made pursuant to a federal statute that imposes a tax on "any person who acquires directly or indirectly *structured settlement payment rights* in a structured settlement factoring transaction," (26 U.S.C. § 5981(a), italics added) but makes the tax inapplicable "in the case of a structured settlement factoring transaction in which the transfer of *structured settlement payment rights* is approved in advance in a qualified order." (26 U.S.C. § 5891(b)(1)(A), italics added.) The Massachusetts law WC invokes also expressly applies to "transfer of structured settlement payment rights." (Mass. Ann. Laws ch. 231C, § 2(a) (LexisNexis 2016).) If WC has not acquired Matthews' structured settlement payment rights, it would seem there would be no occasion for it to seek a qualified order to avoid a tax "imposed on any person who acquires … structured settlement payment rights." (26 U.S.C. § 5981(a).)

Further, Matthews and WC entered into an agreement titled "Agreement to Assign Award"; it was executed prior to the existence of the judgment. The agreement provided that Matthews agreed to "sell, assign and transfer" to WC all of his "right, title and interest in the Award, including but not limited [to] the payments made by the Annuity Issuer or Obligor under the Annuity." Thus, WC's own agreement with Matthews indicated it did not purchase the judgment, but the award and the structured settlement payments it encompassed.

We also reject WC's assertion that it was assigned a judgment for $915,000, rather than a judgment for structured settlement payments, and that it was free to execute on that judgment against Liberty's assets[5] without being bound by the payment schedule in the

---

**5**      We note that Liberty was not among the parties against whom the judgment was entered.

structured settlement agreement.  The award and the judgment incorporated the terms of the structured settlement, including the payment schedule.  WC could acquire by assignment no greater rights than Matthews held.  (*Johnson v. County of Fresno* (2003) 111 Cal.App.4th 1087, 1096.)  WC does not contend *Matthews* had a judgment that he could have executed on at any time and obtained the full $915,000 amount, despite the agreement for periodic payments.  If Matthews had obtained such a judgment, he would not need a complex and expensive transaction with WC to turn his judgment into immediate cash.

The record does not support WC's contention that it could enforce the $915,000 judgment because the structured payment schedule was optional.  The language of the structured settlement agreement that WC referred to as giving the employer or its insurer only an option to make periodic payments actually "reserve[d] the right to fund the liability to make the Periodic Payments through the purchase of an annuity."  The periodic payments are obligatory; funding them through the purchase of an annuity was optional.

We can envision no way the judgment can be separated from the structured settlement payment rights.  The WCAB's order approved the parties' compromise and release agreement, which contained the terms of the structured settlement, and entered an award in favor of Matthews on the terms of that agreement.  The judgment subsequently obtained was entered "in conformity with the Order Approving Compromise & Release." Thus, the judgment incorporated the terms of the WCAB order, which made the terms of the structured settlement its award.  WC could not enforce the judgment without enforcing the terms of the WCAB award and the structured settlement agreement.

## ***DISPOSITION***

The order denying WC's motion for a qualified order approving assignment of Matthews' judgment is affirmed. Liberty is entitled to recover its costs on appeal from WC.

_____

HILL, P.J.

WE CONCUR:


_____

GOMES, J.


_____

DETJEN, J.

16.