Filed 4/20/22  P. v. Gilbert CA4/2

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

|   |   |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>JORGE DAGOBERTO GILBERT,<br><br>    Defendant and Appellant. | E075637<br><br>(Super.Ct.No. INF1800573)<br><br>OPINION |

APPEAL from the Superior Court of Riverside County.  Charles J. Koosed, Judge.
Affirmed in part and remanded with directions.

Torres & Torres and Steven A. Torres, under appointment by the Court of Appeal,
for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney
General, Julie L. Garland, Assistant Attorney General, Arlene A. Sedival and Minh U.
Le, Deputy Attorneys General, for Plaintiff and Respondent.

Defendant and appellant Jorge Dagoberto Gilbert was convicted of torturing and
attempting to murder his girlfriend.  In this appeal, he asks that we review the sealed

1

transcript of the trial court's in camera proceeding conducted under *Pitchess v. Superior Court* (1974) 11 Cal.3d 531 (*Pitchess*) to determine whether the trial court erred in ruling on his request to disclose the personnel records of a law enforcement officer. He further argues that (1) there was insufficient evidence to support the jury's finding that he personally used a dangerous or deadly weapon during the course of the attempted murder; (2) the trial court erred in responding to a question from the jury; (3) there is an error in the abstract of judgment; and (4) the matter should be remanded to allow the trial court to exercise its sentencing discretion under the newly enacted Assembly Bill No. 518 (Assembly Bill 518).

We agree that the matter must be remanded for resentencing in light of Assembly Bill 518 and for preparation of an amended abstract of judgment. We affirm the judgment in all other respects.

## I. BACKGROUND

Gilbert's girlfriend Jane Doe testified that on the morning of March 30, 2018, she picked Gilbert up from jail, where he had spent the night. They went back to their shared residence, had breakfast, and retired to the bedroom. Both were under the influence of illegal drugs; at the time, Doe used heroin and methamphetamine every day, and Gilbert smoked methamphetamine.

Soon, while Doe and Gilbert were still naked in bed, they began to argue. Gilbert was upset because he believed Doe had been unfaithful to him, which Doe denied. The argument "escalated to a physical situation." Doe's memory of the exact order of events

2

was hazy, but during the "situation" Gilbert tied her hands, punched her multiple times in the head and ribs, "sliced" her legs and hand three or four times with a box cutter, burned her with a methamphetamine pipe several times, and strangled her with his hands to the point where she lost consciousness. Doe did not recall physically resisting Gilbert's violence, only telling him that she had not cheated on him and asking him to "please stop." She escaped after what she estimated to be "a couple hours." When Gilbert went to the bathroom, she ran out of the house, still naked but wrapped in a blanket. She sought help from the first people she saw outside, neighbors who were holding a yard sale. She told them that someone was chasing her.

The neighbors brought Doe inside and closed all the doors and windows of the house. Doe identified her "boyfriend" as the person chasing her and said that he was trying to kill her. A short time later, one of the neighbors saw from a window that a man she described as bald, short, and Hispanic—a description that matches Gilbert—was on the street in front of their house. He had come from the same direction as Doe, and he was holding an object that the neighbor thought was a knife. He appeared to be "desperate," "nervous," and "angry," pacing back and forth and apparently looking for someone. Over Doe's objection, the neighbor called 911.

A registered nurse who conducted a forensic medical exam of Doe observed facial injuries consistent with being punched or kicked in the head; she had dried blood in her nose from a bloody nose, both eyes were almost shut from swelling, and there was bruising and abrasions on her forehead, above and below her lips, and on the inside of her

3

upper lip where it rubbed against her teeth. Bruises on her legs were also consistent with receiving kicks or punches. She had bruising, redness, and abrasions on her neck and jawline consistent with being strangled during a struggle, including "defensive wounds." She had burns on her right hand and wrist and on her left leg.[1] The burn on her leg appeared more severe than a first degree burn. She had ligature marks consistent with being bound by the wrists. She had "incised wounds" consistent with being stabbed with a sharp object on her thigh and back. The nurse opined that Doe could have died as a result of her injuries. Doe was held overnight in the hospital for observation. Doe was left with permanent scars on her legs, wrist, hand, and back from cuts and burns.

Gilbert did not testify at trial or present any other form of affirmative defense.

The jury found Gilbert guilty of torture (Pen. Code[2], § 206, count 1) and attempted murder (§§ 664, 187, subd. (a), count 2). It also found true that Gilbert had personally used a deadly or dangerous weapon, a knife, in committing both offenses (§ 12022, subd. (b)(1)), and that Gilbert had personally inflicted great bodily injury on Doe in committing count 2 (§ 12022.7, subd. (e)). The trial court sentenced Gilbert to an indeterminate term of seven years to life in prison for count 1, plus a consecutive one-year term for the weapons enhancement of that count. It imposed and stayed sentences for count 2 and the enhancements of that count.

---

[1] The nurse also observed a burn on Doe's face, underneath her eye, but Doe testified that burn came from an earlier accident with a methamphetamine pipe, not from Gilbert's attack.

[2] Further undesignated statutory references are to the Penal Code.

4

## II. DISCUSSION

### A. Pitchess *review*

Before trial, Gilbert filed a *Pitchess* motion seeking discovery of the personnel records of a particular officer of the Desert Hot Springs Police Department. The officer was among those who responded to the initial 911 call, he interviewed Doe on the scene, and he was involved in Gilbert's subsequent arrest. The officer also located Doe on April 6, 2018, and transported her to the police station for an interview with him and another officer. The trial court found that good cause existed to conduct an in camera review of the officer's personnel records. During the in camera proceeding, the trial court swore in the custodian of records and questioned the custodian about the officer's personnel file.[3] The trial court reviewed the file, described the files it had reviewed, and concluded that there were no relevant material records to be disclosed.

In briefing on appeal, the People oppose Gilbert's request that we review the sealed transcript of the in camera proceedings, arguing that such a review is "unnecessary" because the officer did not testify at trial. We disagree. For example, as Gilbert notes in his own briefing, *the defense* might well have called the officer to testify if his personnel file included discoverable information "pertaining to evidence or witness

---

[3] To be precise, the review was conducted over two days because the trial court belatedly realized that it had failed to swear in the custodian of records. When the custodian returned on the second day, the court remedied this omission, and the custodian confirmed that everything that he had stated on the first day was true and correct to the best of his knowledge. On the second day, the court also reviewed again the same documents and further questioned the custodian.

tampering." Such information could tend to support defense arguments challenging Doe's testimony regarding the source of her injuries. We find it plausible that, under the right circumstances, a trial court's failure to disclose such information might amount to a prejudicial abuse of discretion.

In this case, however, we find no error. We have reviewed the sealed transcript of the trial court's in camera review to determine if it abused its discretion in ruling that there was nothing that should be disclosed. (*People v. Mooc* (2001) 26 Cal.4th 1216, 1228.) We conclude that the trial court appropriately exercised its discretion.

B. *Personal Use of Dangerous or Deadly Weapon*

Gilbert argues that the evidence was insufficient to support the jury's true finding on the section 12022, subdivision (b)(1) enhancement of count 2, based on his use of a knife in committing the offense. He concedes that there was evidence he "made a few cuts to Doe with the box cutter," but argues that "there is no conceivable way these injuries were the basis of the attempted murder conviction." He asserts that the "obvious candidate for that crime was the strangulation," in which "[t]he knife played no part." We reject both Gilbert's framing of the issue and his conclusion.

"We review the sufficiency of the evidence to support an enhancement using the same standard we apply to a conviction." (*People v. Wilson* (2008) 44 Cal.4th 758, 806.) We examine "the entire record in the light most favorable to the judgment to determine whether it contains substantial evidence—that is, evidence that is reasonable, credible, and of solid value—from which a reasonable trier of fact could find [the allegation true]

6

beyond a reasonable doubt." (*People v. Lindberg* (2008) 45 Cal.4th 1, 27 (*Lindberg*).) In so doing, we "presume in support of the judgment the existence of every fact the jury could reasonably have deduced from the evidence." (*People v. Zamudio* (2008) 43 Cal.4th 327, 357.) We affirm the jury's finding "'unless it appears "that upon no hypothesis whatever is there sufficient substantial evidence to support"' the jury's verdict." (*Ibid*.)

Regarding the attempted murder charge, the prosecution advanced two alternative hypotheses regarding the underlying conduct. In closing argument, the prosecutor invited the jury to find Gilbert guilty *either* because of "the strangulation" or "the totality of the injuries, the strangulation, the stabbing, the slicing, the puncturing with that box cutter, the bruises, she was beat so badly, and the burns."[4] The jury's verdict, finding Gilbert guilty of attempted murder and finding true the allegation that he used a knife in committing that offense, is entirely consistent with the second hypothesis.

Moreover, the evidence amply, if only circumstantially, supports that second hypothesis, that is, that Gilbert specifically intended to torture Doe *to death*. He held her captive for hours, inflicting a variety of injuries, which a medical professional opined could have been fatal. He did not inflict even more injuries only because she escaped from the house and he failed to recapture her thanks to the assistance she received from neighbors. Doe inferred from Gilbert's actions that he intended to kill her, and she told

---

[4] The jury was properly instructed on unanimity using the pattern instruction CALCRIM No. 3500.

the neighbors as much. The jury made the same inference. In our view, that inference was perfectly reasonable.

Further, once it is inferred that Gilbert's intent in committing the torture was not only to inflict pain, but also to cause Doe's death, it follows that any particular act of torture—including Gilbert's use of the box cutter to stab or cut Doe—is also part and parcel of the attempted murder. It is simply irrelevant that any particular injury Doe suffered would not likely be fatal on its own. "Attempted murder requires the specific intent to kill and the commission of a direct but ineffectual act toward accomplishing the intended killing." (*People v. Lee* (2003) 31 Cal.4th 613, 623.) Thus, where the intended method of killing is the proverbial death by a thousand cuts, the crime of attempted murder is complete when the first cut, no matter how deep, is inflicted. And where, as here, a knife is used in doing so, the predicates for a section 12022, subdivision (b)(1) enhancement are also completed.

We conclude that the jury's true finding on the weapons enhancement of count 2 was supported by substantial evidence.

C. *Response to Jury Question*

Gilbert argues that the court gave an incomplete response to a jury question regarding provocation as an element of the lesser included offense of voluntary manslaughter. He asserts that the incomplete response, particularly in the context of misleading argument on the issue by the prosecution, constitutes prejudicial error and requires reversal. We are not persuaded.

8

1.  *Additional Background*

During deliberations, the jury sent out a written question about the provocation element of attempted voluntary manslaughter, a lesser included offense of attempted murder on which it was instructed using CALCRIM No. 603.  The elements of attempted voluntary manslaughter were stated in the instruction as follows:  "The defendant attempted to kill someone because of a sudden quarrel or in the heat of passion if:  [¶] 1. The defendant took at least one direct but ineffective step toward killing a person;[¶] 2. The defendant intended to kill that person; [¶] 3. The defendant attempted the killing because he was provoked;[¶] 4. The provocation would have caused a person of average disposition to act rashly and without due deliberation, that is, from passion rather than from judgment;[¶] AND [¶] The attempted killing was a rash act done under the influence of intense emotion that obscured the defendant's reasoning or judgment."

The jury's question about those elements was:  "Question: Based on [...] point 3 of section 603, Attempted Voluntary Manslaughter--[¶] 1) 'Provoked'—is this term based on being 'provoked' by an outside person, entity, etc.[¶] 2) Can a person 'self-provoke'? Does this qualify as being 'provoked' if it was made up in their own mind?"

The prosecution and the defense agreed with the court's "inclination" that the appropriate response was to refer the jury back to its instructions.  The court did so in writing, drawing the jury's attention to several specific paragraphs, but without adding any further elaboration:  "Ques 1 + 2: please see CalCrim 603, paragraphs 2, 3, and 4."

9

The court's response was perhaps ambiguous, as the jury's version of CALCRIM 603 was not numbered by paragraph. Apparently, however, the court referred to the second, third, and fourth paragraphs of explanation following and on the same page as the elements of the offense, which are the three paragraphs dealing with provocation. Those paragraphs are: "In order for a sudden quarrel or heat of passion to reduce an attempted murder to attempted voluntary manslaughter, the defendant must have acted under the direct and immediate influence of provocation as I have defined it. While no specific type of provocation is required, slight or remote provocation is not sufficient. Sufficient provocation may occur over a short or long period of time.[¶] It is not enough that the defendant simply was provoked. The defendant is not allowed to set up his own standard of conduct. You must decide whether the defendant was provoked and whether the provocation was sufficient. In deciding whether the provocation was sufficient, consider whether a person of average disposition, in the same situation and knowing the same facts, would have reacted from passion rather than judgment.[¶] If enough time passed between the provocation and the attempted killing for a person of average disposition to 'cool off' and regain his or her clear reasoning and judgment, then the attempted murder is not reduced to attempted voluntary manslaughter on this basis."

In closing arguments, the prosecution recited the elements of voluntary manslaughter, and then addressed the issue of provocation as follows: "They gave us the same example almost all throughout law school to show—to describe voluntary manslaughter. A man comes home early from a business trip, goes into his bedroom,

10

finds his wife in bed with his best friend. He is just so enraged, just so caught up in this emotion of seeing his beloved wife in bed with his best friend that he runs to his bedside table and grabs his gun and shoots them both with his gun. His reasoning was obscured, his judgment was obscured by that intense emotion that overtook his body. He was provoked by what he saw.[¶] So ask yourselves was the defendant provoked. CALCRIM 603 describes what is sufficient for provocation. Slight or remote provocation is not sufficient. It is not enough that the defendant was simply provoked. He's not allowed to set up his own standard of conduct. In deciding whether the provocation, if you believe there is one, was sufficient, consider whether a person of average disposition in the same situation and knowing the same facts would have reacted from passion rather than judgment.[¶] Ladies and gentlemen, there is no evidence of provocation in this case. The defendant may have thought he was provoked, right. He was mad. He was so convinced that [Doe] was cheating on him. That is not sufficient provocation. Just because he thinks he was provoked does not mean that is the standard that the law allows. He's not allowed to set up his own standard of conduct. The evidence we have heard proves that defendant did not commit attempted voluntary manslaughter. What he did was commit attempted murder."

2. *Analysis*

"Generally, a party may not complain on appeal that an instruction correct in law and responsive to the evidence was too general or incomplete unless the party has requested appropriate clarifying or amplifying language." (*People v. Andrews* (1989) 49

11

Cal.3d 200, 218.)  Gilbert did not make any such request in the trial court, instead agreeing with the court's approach of simply referring the jury to its instructions, with reference to the paragraphs explaining the concept of provocation.  At least arguably, therefore, Gilbert has forfeited his claim of instructional error.

There is an exception to the forfeiture rule, however, where the claimed instructional error "affected the substantial rights of the defendant, i.e., resulted in a miscarriage of justice, making it reasonably probable the defendant would have obtained a more favorable result in the absence of the error." (*People v. Andersen* (1994) 26 Cal.App.4th 1241, 1249.)  Determining whether this exception applies "necessarily requires an examination of the merits of the claim—at least to the extent of ascertaining whether the asserted error would result in prejudice if error it was." (*Ibid.*)  Moreover, we have the discretion to address a forfeited claim of instructional error on its merits to "forestall a petition for writ of habeas corpus based on a claim of ineffectual counsel." (*People v. Williams* (2000) 78 Cal.App.4th 1118, 1126.)  We find it most expedient, therefore, to address the issue on the merits.

Gilbert contends that the trial court, in response to the jury's question, should have clarified that if Gilbert "reasonably believed that Doe had cheated on him, whether true or not, it could be grounds for provocation."  He asserts that the lack of such a clarifying instruction, particularly when coupled with prosecution arguments, "left the jury with the belief that appellant could not have been provoked unless he was factually 'correct' that Doe cheated on him."  Not so.

We review a claim of instructional error de novo. (*People v. Posey* (2004) 32 Cal.4th 193, 218.) "'The relevant inquiry [when instructional error is claimed] is whether, "in the context of the instructions as a whole and the trial record, there is a reasonable likelihood that the jury was misled to defendant's prejudice." [Citation.] Also, '""we must assume that jurors are intelligent persons and capable of understanding and correlating all jury instructions which are given.""""" (*People v. O'Malley* (2016) 62 Cal.4th 944, 991.)

In our view, the response Gilbert argues the court should have given would not have been responsive to the question that the jury posed. The jury did not ask whether it mattered whether Gilbert's belief in Doe's infidelity was accurate or inaccurate. Rather, it was grappling with how to distinguish legally adequate provocation from extreme, but unprovoked emotion. In other words, the jury requested clarification regarding whether there had to be evidence that Gilbert was confronted somehow with external, objective indications of Doe's infidelity (no matter whether mistakenly perceived or actual). Or, was it enough if there was only evidence of extreme emotion triggered by factors "made up in [Gilbert's] own mind," and unprovoked by any objective factors ("an outside person [or] entity")? The trial court properly directed the jury to the portion of its instructions describing the objective aspects of the standard. This includes the principle, directly responsive to the jury's question, that it is not enough that Gilbert's own emotions were aroused to the point that he acted out of passion, since he "is not allowed to set up his own standard of conduct." Rather, the jury's job is to decide "whether a

13

person of average disposition, in the same situation and knowing the same facts, would have reacted from passion rather than judgment." This portion of its instructions is entirely consistent with the "venerable understanding" that "[p]rovocation is adequate only when it would render an ordinary person of average disposition 'liable to act rashly or without due deliberation and reflection, and from this passion rather than from judgment.'" (*People v. Beltran* (2013) 56 Cal.4th 935, 957.)

We also do not construe the prosecution's argument regarding provocation in the manner Gilbert proposes. Taken in context, the prosecution's comments on provocation focused on what it viewed as a complete lack of any evidence of facts or circumstances relating to Doe's infidelity (real or imagined) that would have provoked a reasonable person. (Cf., e.g., *People v. Berry* (1976) 18 Cal.3d 509, 514 [victim "continually provoked" the defendant over a period of weeks, including by "repeated references to her involvement with another man"].) We find nothing inappropriate or misleading about such an argument.

We conclude there is no reasonable likelihood that the jury's instructions on provocation, whether taken alone or read in conjunction with the prosecution's argument, were misunderstood in the manner Gilbert suggests. Because we find no instructional error, we need not and do not address the parties' arguments regarding prejudice.

D. *Assembly Bill 518*

Under the law in effect at the time of Gilbert's sentencing, a defendant who committed an act punishable by different laws had to be punished under the law that

14

provided for the longest possible term of imprisonment. (Former § 654, subd. (a).)

Effective January 1, 2022, Assembly Bill 518 amended section 654 to allow the trial

court the discretion to choose to punish the defendant under any of the applicable laws.

(§ 654, subd. (a); see Stats. 2021, ch. 441, § 1.) The People concede, and we agree, that

Gilbert is entitled to the benefit of this ameliorative change in the law, since his case is

not yet final. (See *People v. Superior Court (Lara)* (2018) 4 Cal.5th 299, 307-308

[discussing *In re Estrada* (1965) 63 Cal.2d 740].) The matter must therefore be

remanded for resentencing so that the trial court can consider how to exercise its new

sentencing discretion.

E. *Abstract of Judgment*

Gilbert's abstract of judgment states that he was convicted of "1st Attempted

Murder." The People did allege that Gilbert attempted to commit a murder that was

"willful, deliberate, and premeditated," triggering the heightened punishment for such

attempted murders under section 664, subdivision (a).[5] The trial court, however, granted

_____

[5] Section 664, subdivision (a) provides: "[I]f the crime attempted is willful, deliberate, and premeditated murder, as defined in Section 189, the person guilty of that attempt shall be punished by imprisonment in the state prison for life with the possibility of parole." Occasionally, even our Supreme Court has referred to attempts falling within this provision as "first degree attempted murder." (*People v. Mitchell* (2019) 7 Cal.5th 561, 564.) Strictly speaking, however, "[a]ttempted murder is not divided into different degrees." (*People v. Favor* (2012) 54 Cal.4th 868, 876.) Rather, this clause of section 664, subdivision (a) "'constitutes a penalty provision that prescribes an increase in punishment (a greater base term) for the offense of attempted murder.'" (*People v. Favor*, *supra*, at p. 877, quoting *People v. Bright* (1996) 12 Cal.4th 652, 665-667, disapproved on another ground in *People v. Seel* (2004) 34 Cal.4th 535, 550, fn. 6.) Gilbert was convicted and sentenced under a different clause of section 664, subdivision (a), providing that "[i]f the crime attempted is any other one in which the maximum

*[footnote continued on next page]*

15

a defense motion to dismiss the premeditation and deliberation allegation, and the jury was not asked to consider whether defendant acted with a heightened mental state. Thus, a more accurate description of Gilbert's conviction offense for count 2 would be simply "Attempted Murder." When Gilbert is resentenced, the trial court should ensure that the new abstract of judgment accurately reflects Gilbert's conviction offenses.

## III. DISPOSITION

Gilbert's sentence is vacated, and the matter is remanded to the trial court with directions to resentence Gilbert, including by reconsidering which punishments should be stayed under section 654 as amended by Assembly Bill 518. The clerk of the court shall then prepare an amended abstract of judgment that corrects the description of Gilbert's conviction offenses and reflects his new sentence. The clerk of the court shall then send a certified copy of the amended abstract of judgment to the Department of Corrections and Rehabilitation. The judgment is affirmed in all other respects.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

RAPHAEL _____
                                        J.

We concur:

RAMIREZ _____
                    P. J.

MENETREZ _____
                    J.

_____

sentence is life imprisonment or death, the person guilty of the attempt shall be punished by imprisonment in the state prison for five, seven, or nine years."

16